## Erny v. G. W. Schmidt Company.

*Corporation—Stockholder's bill against officers and directors—Fraud.*

Where the president of a corporation has, without concealment, withdrawn moneys from the corporation, a very large proportion of which he has used for the benefit of the corporation, and the remainder for his own benefit, and the withdrawal of such moneys has been acquiesced in by the corporation and the stockholders for more than two years, a purchaser of the stock after the expiration of the two years, from an unregistered pledgee of the stock who had participated in the transactions, and two unregistered pledgees of the stock with knowledge of the transactions, have no standing to file a bill in equity against the officers and directors of the corporation to hold them personally liable for the alleged loss.

Argued Nov. 3, 1899. Appeal, No. 196, Oct. T., 1899, by plaintiffs, from decree of C. P. No. 1, Allegheny Co., March T., 1899, No. 4, dismissing bill in equity in case of J. F. Erny, for himself and all other stockholders of The G. W. Schmidt Company, who being interested in the subject-matter of this complaint shall become parties hereto and contribute to the expenses of this suit, v. The G. W. Schmidt Company, George William Schmidt, President, William Grant Wescott, Secretary and Treasurer, George William Schmidt, Mary Theresa Fuhrer,

Mary Ann Schmidt, George W. Schmidt, Jr., and Ellen Josephine Schmidt, the directors, of said The G. W. Schmidt Company et al.    Before STERRETT C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ;    Affirmed.

Bill in equity for an account and a receiver.    Before COLLIER, J.

The court filed the following opinion:
This is a minority stockholders' bill, praying for an injunction, for an account and for a receiver.

### FINDINGS OF FACT.

1. The G. W. Schmidt Company was incorporated on October 20, 1896, under the laws of Pennsylvania, with a capital stock of $150,000 divided into 1,500 shares of the par value of $100 each.

2. The incorporators of the said company were G. W. Schmidt, Mary Theresa Fuhrer, Mary Ann Schmidt, Geo. W. Schmidt, Jr., and Ellen Josephine Schmidt.

3. The said incorporators, being all the stockholders of record, were elected directors of the company, and George W. Schmidt was elected president thereof and Wm. G. Wescott, secretary and treasurer, and have continued to be such since the incorporation.

4. The stock of the said company was divided among the said incorporators as follows: to George W. Schmidt 1,350 shares, the same being paid for by the transfer to the corporation of the building at No. 339 Fifth avenue, Pittsburg, subject to certain mortgages against it, and the stock of liquor and whiskies in the warehouse of the said G. W. Schmidt, valued at $35,000.    The balance of the stock was divided among the other incorporators and was paid for in cash.

5. The stock of the defendant company at the time this bill was filed was held as follows:

| | |
|---|---:|
| George W. Schmidt, Jr., held and owned    . | 80 shares |
| Mary A. Schmidt held and owned    .    . | 15 shares |
| Mary A. Schmidt held as pledges of G. W. Schmidt    .    .    .    .    .    . | 177 shares |
| Amount carried forward    .    . | 272 shares |

|  |  |
|---|---|
| Amount brought forward . . | 272 shares |
| Ellen J. Schmidt held and owned . . | 15 shares |
| Ellen J. Schmidt held as unregistered pledges of G. W. Schmidt . . . | 222 shares |
| Mary F. Fuhrer held and owned . . | 15 shares |
| Mary F. Fuhrer held as unregistered pledges of G. W. Schmidt . . . . . | 210 shares |
| Wilhelmina Laurer held as unregistered pledges of G. W. Schmidt . . . | 15 shares |
| The Iron City National Bank hold as unregistered pledges of G. W. Schmidt . | 50 shares |
| James Callery & Company held as unregistered pledges of G. W. Schmidt . . | 180 shares |
| City Savings Bank held as unregistered pledges of G. W. Schmidt . . . | 107 shares |
| George W. Schmidt was the registered owner of 1,325 shares, of which 254 shares were not held by any other party to this suit . | 254 shares |
| Total number of shares represented by defendants . . . . | 1,340 shares |
| John D. Brown, Esq., one of the plaintiffs as unregistered pledges of G. W. Schmidt, holds a certificate for . . . . | 100 shares |
| Mr. J. W. Arrott, as unregistered pledges of G. W. Schmidt, holds a certificate for . | 10 shares |
| Mr. J. F. Erny, by transfer October 22, 1898, became the registered holder of . . | 50 shares |
| Total shares held by plaintiffs, of which 110 are held by pledges of Schmidt . | 160 shares |

6. The plaintiff, Mr. J. F. Erny, is and was at the time he acquired his stock in the defendant company, the cashier of the German Savings & Deposit Bank, which held a certificate for fifty shares of stock in the defendant company, standing in the name of G. W. Schmidt on the company's books, which has been pledged by George W. Schmidt to said bank as collateral security for the payment of a certain promissory note. The note being overdue, on or about October 20, 1898, the bank, without calling on said Schmidt for more collateral, or notifying him of the time when and place where it would sell said

pledged stock, or giving any notice that it proposed to sell it, at a meeting of the directors privately sold the certificate to its cashier, Erny, for $100.

7. On November 22, 1893, the plaintiff, Erny, notified the defendant company in writing to immediately bring suit against George W. Schmidt and all the directors of defendant company to recover the moneys loaned to G. W. Schmidt. No request was made that a meeting of the shareholders be called to consider the matter. On December 3, 1898, the plaintiff filed this bill.

8. Prior to the incorporation of the G. W. Schmidt Company, G. W. Schmidt was a large wholesale dealer in liquors, being in business at Nos. 339 and 341 Fifth avenue, Pittsburg. He had been in the liquor business since 1865, in the same city, having succeeded his father, and had acquired a large and extensive trade, extending to many parts of the United States. He had a wide reputation as a dealer in liquors. Besides a limited stock of liquors that said Schmidt had in his store on Fifth avenue, Pittsburg, at the time of the incorporation of the company, he owned a large quantity of whisky stored in various warehouses throughout the United States, comprising about 8,600 barrels, all of standard brands and some of which was very rare and valuable, and not to be obtained in the market. All of this whisky was pledged to various creditors of said George W. Schmidt, chiefly in the city of Pittsburg, to secure his personal indebtedness, which about equaled the then value of the whisky. The price of whisky had fallen for several years, and was then lower than it had been for a very long time. It was the expectation of said Schmidt as well as business dealers in whisky at that time, that an early and rapid enhancement in the value of whisky would shortly ensue. This whisky had been a portion of the merchandise and stock in trade which said Schmidt had sold in his business which he had been carrying on at Fifth avenue, Pittsburg. It is not unusual for wholesale dealers in whisky in Pittsburg to carry large quantities of whisky stored in bonded warehouses. The government tax had been paid on part of said whisky. Under normal conditions whisky enhances in value through age from ten to fifteen per cent.

9. It was the purpose of the incorporators of the Schmidt

Company to acquire the stock in trade and good-will of George W. Schmidt in the liquor business, including the real estate known as the Schmidt Building, wherein said business was conducted, and that the company should succeed, hold and if possible perpetuate the large trade and business formally carried on by George W. Schmidt as a wholesale dealer in liquors and cigars.

10. Shortly after the incorporation of the G. W. Schmidt Company, by a bill of sale drawn by the plaintiff, J. D. Brown, Esq., acting as attorney for the company, G. W. Schmidt sold, assigned and transferred his entire stock of bonded and tax-paid whisky to the G. W. Schmidt Company, which was accepted by the company. It was provided in the bill of sale that as part of the consideration, upon sale of any or all of the said whiskies, should the said G. W. Schmidt Company realize any sum or amount, over and above the amount of the hypothecation or loan upon the said goods, or any of them, prior to the transfer, the excess shall be applied and paid to Mary F. Fuhrer, Mary A. Schmidt, Ellen J. Schmidt and John D. Brown in discharge of indebtedness of said Schmidt due to said parties. The amount of said Schmidt's indebtedness to said four last named parties was somewhat in excess of $50,000. Said Mary A. Schmidt, Mary F. Fuhrer and Ellen J. Schmidt and John D. Brown, Esq., hold other collateral for said debts of Schmidt to them.

11. After the sale of said whisky to the company by Schmidt, and during the period prior to bringing of the suit, the company used for the purpose of its trade about 3,000 barrels of said hypothecated whisky, redeeming the same as the demands of the customers required from the lien of the debts for which it was pledged, by paying the market value of the quantities required to the pledgees hereof. The use of the finer grades among said stock was of exceptional advantage to the company, in giving it an advantage over its competitors in the possession of rare brands.

12. The whisky which still remained in the hands of the pledgees unsold when this suit was brought, amounting to about 5,400 barrels, has recently enhanced from twenty to sixty per cent in value, and now exceeds in value the debts for which it was respectively pledged, not including the debts to John

Brown, Esq., M. F. Fuhrer, M. A. Schmidt and Ellen J. Schmidt. It is possible that the company may realize a considerable equity from the whisky.

13. The sums of money which were procured by George W. Schmidt from the company, and which aggregated the sum of $52,213.83 were used as follows : A portion was applied by him to the payment of interest as it matured, from time to time, upon the collateral promissory notes which were held by various banks and individuals to whom the whisky which he had assigned to the company had been pledged as collateral security. A portion was used to pay insurance premiums which matured from time to time, upon policies of insurance covering the whisky so pledged and assigned to the company. A portion was applied by him to pay a portion of the principal and interest on some of his debts, for which whisky was not pledged. A portion was applied by him to pay a part of the principal of the indebtedness for which the whisky assigned to the company had been and was then pledged. About $2,880 was part of the instalment of interest on the first mortgage covering the Schmidt Building, which matured on December 1, 1898, and which had been paid by the company in January, 1897, which part, amounting to $2,880, was charged on the books to G. W. Schmidt. The Schmidt Building had been acquired by the company from George W. Schmidt in October, 1896, subject to the lien of the mortgage thereon. A portion of said sum was used by said Schmidt for various private purposes.

The various ends to which said total sum was applied by George W. Schmidt, are duly and accurately shown and stated upon his books of account, which were kept by William G. Wescott, the secretary and treasurer of said G. W. Schmidt Company, at the office of said company.

14. The effect of the payment by said Schmidt of part of the principal and interest of the debts for which whisky had been pledged and of the insurance premiums upon the insurance policies covering said whisky, was to save the said whisky from a forced sale by the creditors holding the same, which would have divested the company of any equitable interest which it had or might have therein, and also have deprived it of the advantages of said whisky for the purposes of its business; and as the company was a borrower from some of the

banks which held said hypothecated whisky, said payment also had the effect of maintaining the credit of the company through the personal credit of George W. Schmidt. George W. Schmidt believed from his long personal experience in the whisky business, that the value of the whisky would greatly advance in value to the advantage of the company.

15. The sum of money obtained by Schmidt from said Schmidt Company was procured in various amounts from time to time since the incorporation of said company, upon an open book account. There was no concealment of the fact of the payment of said moneys or the amount thereof, from the stockholders or creditors of said company, and all of the said sums so paid to said Schmidt from time to time were promptly and regularly entered upon the books of said company, and said books were at all times open to the examination and inspection of the officers and directors and all the stockholders thereof. There was no intention or purpose on the part of said G. W. Schmidt or any of the other defendants to cheat and defraud the defendant company or the said plaintiffs. All of the stockholders knew of the said payments and of the general purposes to which said moneys were actually applied by George W. Schmidt, and said payments were acquiesced in and consented to by all of the stockholders of said company, for over a period of about two years.

16. None of the defendant directors except G. W. Schmidt had any knowledge or skill in the liquor business, and the management of the affairs of the company devolved with their consent and the consent of all the stockholders upon George W. Schmidt, who had the experience of many years in said business in Pittsburg, and had acquired a reputation for skill in the business.

17. There is no evidence that the defendants, Ellen J. Schmidt, George W. Schmidt, Jr., Mary A. Schmidt and Mary F. Fuhrer or either of them knew that George W. Schmidt had pledged any share of stock belonging to him to any person, excepting the shares of stock which he had pledged to Ellen J. Schmidt, Mary A. Schmidt, and Mary F. Fuhrer, respectively, and neither the said J. D. Brown, Esq., or J. W. Arrott or the German Savings & Deposit Bank from whom Erny acquired his stock or any other pledgees of stock belonging to Schmidt

ever notified the Schmidt Company that they held any shares of stock in said corporation.

18. The assets of the G. W. Schmidt Company are about as follows:

| | |
|---|---:|
| Fifth avenue real estate . . . . | $350,000.00 |
| Merchandise approximately $25,000 to . | 27,000.00 |
| Office rents due . . . . . . | 2,365.14 |
| Braddock real estate . . . . | 251.18 |
| Book accounts, about from $16,000 to . | 18,000.00 |
| G. W. Schmidt account . . . . | 52,213.83 |
| Total . . . . . . | $449,830.15 |

That all of said assets, excepting the account due by Schmidt are fully worth the several sums stated.

That George W. Schmidt is a bankrupt and that his estate is in course of administration in bankruptcy, and that it does not appear from the testimony what amount will be received by the G. W. Schmidt Company out of the said bankrupt estate, but it is not likely to be any great amount. The schedule filed in the bankruptcy proceedings shows that he has no property applicable to the payment of unsecured creditors.

19. The liabilities of said G. W. Schmidt Company are at present as follows:

| | |
|---|---:|
| Bills payable . . . . . . | $ 43,309.31 |
| First mortgage on real estate . . . | 160,000.00 |
| Second mortgage, about . . . . | 23,000.00 |
| Ground rent, capitalized . . . | 1,900.00 |
| Ellen J. Schmidt . . . . . | 1,100.82 |
| Unpaid invoices and bills, about . . | 6,600.00 |
| Debts . . . . . . . | $235,910.13 |
| Capital stock . . . . . | 150,000.00 |
| Total . . . . . . . | $385,910.13 |

Of the total amount of indebtedness of this company exclusive of mortgage and ground rent liens, the sum of $33,573.35, about three fifths thereof, is owing to several of the defendants, as follows:

| | |
|---|---:|
| Iron City National Bank, . . . | $1,800.00 |
| City Savings Bank, . . . . . | 5,000.00 |
| Amount carried forward . . | $6,800.00 |

| Amount brought forward | . | . | 6,800.00 |
| City Insurance Company | . | . . | 1,647.80 |
| Union Storage Company | . | . . . | 230.00 |
| J. M. Schoonmaker | . | . . . | 3,728.55 |
| Ellen J. Schmidt | . | . . . | 21,266.67 |
| | | | $33,673.02 |

That Ellen J. Schmidt is one of the directors and a near relative of Schmidt, and has loaned the said company the said sum of $21,266.67 in various amounts and at different times in good faith, and that the other creditors above mentioned have been made defendants upon their own petitions, for the purpose of defending this suit.

20. The withdrawal of said $52,215.63 by the said George W. Schmidt, and the appropriation of said sum by said Schmidt, has not impaired the capital stock of said company.

21. One of the plaintiffs, J. D. Brown, Esq., was attorney for the G. W. Schmidt Company from its incorporation until the fall of 1898, and knew that George W. Schmidt was drawing money from the company from time to time, and that the same was charged to him on the books of the company, and did not actively object or interfere therewith.

22. There is no evidence that either Ellen J. Schmidt, Mary F. Fuhrer or George W. Schmidt, Jr., knew that George W. Schmidt was insolvent during the period within which he procured from the company the various sums of money in the case.

23. That Wm. G. Wescott, secretary and treasurer, and the directors, Ellen J. Schmidt, Mary A. Schmidt and Mary F. Fuhrer, acted in good faith in permitting G. W. Schmidt to practically manage the defendant company and its affairs, and allowing him to use the funds of the company for the purposes to which he applied them, believing it to be for the best interests of the company.

24. G. W. Schmidt devoted himself exclusively to the management of the company's business; the management of the company's affairs by George W. Schmidt, including the loaning to him of the moneys he obtained for the purposes for which he used them was consented to by all the stockholders through a period of about two years.

CONCLUSION OF LAW OF THE COURT BELOW.

1. The mismanagement complained of, having been approved and acquiesced in or ratified by all the stockholders of the company at the time the various acts occurred, the plaintiff, Mr. Erny, who purchased his stock after the alleged management had been acquiesced in by the company through a period of almost two years, cannot complain, especially since his predecessor in title participated in the voidable acts : Church v. Citizens St. Ry. Co., 78 Fed. Repr. 526 ; Brown v. Duluth, M. & N. Ry. Co., 53 Fed. Repr. 889 ; Kent v. Quicksilver Mining Co., 78 N. Y. 159 ; Callanan v. Windsor, 78 Iowa, 193 ; Clark v. American Coal Co., 86 Iowa, 436 ; Cook on Corporations, sec. 730 ; Parsons v. Hayes, 14 Abbott's N. C. 419 ; Wolf v. Shortridge, 8 Dist. Repr. 1 ; Schilling & Schneider Brewing Co. v. Schneider, 110 Mo. 83 ; United Electric Securities Co. v. Louisiana Electric Co., 68 Fed. Repr. 675 ; Venner v. Atchison & S. F. R. R. Co., 28 Fed. Repr. 581 ; Flagler Eng. Machine Co. v. Flagler, 19 Fed. Repr. 468 ; Dimpfell v. Ohio & Miss. Ry. Co., 110 U. S. 209 ; Hawes v. Oakland, 104 U. S. 450 ; Felix Hadley & Co., Ltd., v. Hadley, 77 Law Times Rep. 131.

2. The request of the plaintiff to the defendant, the G. W. Schmidt Company, to bring suit against the directors of the company, does not entitle the plaintiff to maintain his bill. In the absence of fraud, the mismanagement complained of might be ratified and approved by a majority of the stockholders.

The plaintiff did not request that a meeting of the stockholders be convened to consider the question of bringing a suit against the directors. Since no fraud has been proven and because all of the stockholders acquiesced in the alleged mismanagement, and a majority of the stockholders approved it, and plaintiff made no attempt to obtain authority from the corporation to bring suit, his bill must be dismissed : Cook on Corporations, sec. 646, 662, 684 ; Hawes v. Oakland, 104 U. S. 456 ; Gamble v. The Queens County Water Co., 123 N. Y. 91 ; Northwest Trans. Co. v. Beatty, 57 Law Times Rep. N. S. 426 ; Meeker v. The Winthrop Iron Co., 17 Fed. Repr. 48 ; Green's Brice's Ultra Vires, pp. 662–669 ; Samuel v. Holladay, 1 Woodward (U. S.), 400.

It follows, therefore, if our conclusions of law are correct, that the plaintiff's bill must be dismissed.

*Error assigned* was the decree dismissing the bill in equity.

*William L. Monro* and *Thomas Patterson*, with them *J. D. Brown*, for appellants.—A pledgee of stock, or an unregistered stockholder, takes the chances of any intra vires acts of the corporation, no matter how indiscreet they may be, or how damaging to the corporate interests, but he does not take the risks of acts which are purely ultra vires, and, as to such acts, he has the right at any time to call the officers of the corporation to an account: Campbell v. American Zylonite Co., 122 N. Y. 455; Baldwin v. Canfield, 26 Minn. 43; Gibson v. Richmond & D. R. R. Co., 37 Fed. Repr. 743; Parsons v. Joseph, 92 Ala. 403; Winsor v. Bailey, 55 N. H. 218.

In regard to purchase of stock for the very purpose of bringing a stockholder's suit thereon, there is no difference of opinion. The common law clearly is, that such a stockholder has the same right to bring the suit that his transferer had. Such is the rule even though the stock was purchased for the purpose of bringing the suit. The law has nothing to do with the motive of a legal act: Du Pont v. Northern Pac. R. R. Co., 18 Fed. Repr. 467; Ervin v. Oregon City Ry. & Nav. Co., 35 Hun, 544; Bloxam v. Metropolitan Ry. Co., L. R. 3 Ch. App. 337; Seaton v. Grant, L. R. 2 Ch. App. 459; Filder v. London B. & S. C. Ry. Co., 1 Hemming & Miller, 493; Forrest v. Manchester Ry. Co., 4 De Gex, F. & J. 126; McFadden v. Mays Landing & Egg Harbor City R. R. Co., 49 N. J. Eq. 176; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401.

The second conclusion of law of the court below that the request of the plaintiff to the defendants to bring suit does not entitle him to maintain his bill as the mismanagement complained of may be ratified and proved by a majority of the stockholders, is clearly at variance with the following cases: Simpson v. Westminster Palace Hotel Co., 8 House of Lords Cases, 712; Natusch v. Irving, 2 Cooper's Ch. 358; H. & N. H. R. R. Co. v. Croswell, 5 Hill, 383; Brinckerhoff v. Bostwick, 88 N. Y. 52; Robinson v. Smith, 3 Paige, 222; Greaves v. Gouge, 69 N. Y. 154; Heath v. Erie Ry. Co., 8 Blatch. 347; Brewer v. Boston Theatre, 104 Mass. 378; Peabody v. Flint, 88 Mass. 52.

As to the contention of plaintiffs in their third proposed conclusion of law, that the directors are responsible in this case for the return of the moneys, and are liable to account to the corporation, we submit that the principles govern laid down in Spering's App., 71 Pa. 11, Swentzel v. Penn Bank, 147 Pa. 140, Sellers v. Phœnix Iron Co., 13 Fed. Repr. 20, Holmes v. Willard, 125 N. Y. 75, In re Liverpool Household Stores Association, 62 Law Times Rep. 873, and Jackson v. Munster Bank, 15 L. R. Ir. 356.

*Johns McCleave,* with him *D. T. Watson* and *John S. Wendt,* for appellee.—In the absence of manifest error, the appellate court will not review the findings of fact of the court below based on evidence sufficient to submit to a jury: Krumbhaar v Griffiths, 151 Pa. 223; Bugbee's App., 110 Pa. 331; Logue's App., 104 Pa. 136; Warner v. Hare, 154 Pa. 548.

Directors, who are gratuitous mandatories, are only liable for fraud, or such gross negligence as amounts to fraud: Swentzel v. Penn Bank, 147 Pa. 140; Spering's App., 71 Pa. 11; Maisch v. Saving Fund, 5 Phila. 30; Briggs v. Spaulding, 141 U. S. 132; Movius v. Lee, 30 Fed. Repr. 298; Cargill v. Bower, L. R. 10 Ch. Div. 502; Watts's App., 78 Pa. 370; Thompson's App., 11 W. N. C. 414; Williams v. McDonald, 37 N. J. Eq. 409; Beattie v. Ebury, L. R. 7 Ch. App. 777.

Directors are not liable to the company for an ultra vires act which the company has ratified: Holmes v. Willard, 125 N. Y. 75.

The request of the plaintiff to the defendant, the G. W. Schmidt Company, to bring suit against the directors of the company, does not entitle the plaintiff to maintain his bill. In the absence of fraud, the mismangement complained of might be ratified and approved by a majority of the stockholders: Cook on Corp. sec. 684; Bagshaw v. Eastern Union Ry. Co., 7 Hare, 114; Hawes v. Oakland, 104 U. S. 456; Gamble v. Queens County Water Co., 123 N. Y. 91; Northwest Trans. Co. v. Beatty, 57 Law Times Rep. N. S. 426; Meeker v. Winthrop Iron Co., 17 Fed. Repr. 48; Ervin v. Oregon Ry. & Nav. Co., 20 Fed. Repr. 577; Green's Brice's Ultra Vires (2d ed.), 662; Samuel v. Holladay, 1 Woodward (U. S.), 400; Leavenworth v. Chicago Ry. Co., 134 U. S. 704.

The stockholders, who participated or acquiesced in the alleged mismanagement, could not maintain a bill in the corporate name to avoid the transaction : Kent v. Quicksilver Mining Co., 78 N. Y. 159 ; Holmes v. Willard, 125 N. Y. 75 ; Felix Hadley & Co., Ltd., v. Hadley, 77 L. T. Rep. 131 ; Balliet v. Brown, 103 Pa. 546 ; Watts's App., 78 Pa. 395 ; St. Croix Lumber Co. v. Mittlestadt, 43 Minn. 91 ; Hotel Co. v. Wade, 97 U. S. 13 ; Allen v. Wilson, 28 Fed. Repr. 677 ; Gravenstine's App., 49 Pa. 310 ; Arkansas R. L. T. & Co. v. Farmers' Loan & T. Co., 13 Colo. 587 ; Battelle v. Northwestern Cement & C. P. Co., 37 Minn. 89 ; Harmony Building Association v. Goldbeck, 13 W. N. C. 24 ; Allis v. Jones, 45 Fed. Repr. 148 ; Nims v. Mount Hermon Boys' School, 160 Mass. 177.

The mismanagement complained of having been approved and acquiesced in or ratified by all the stockholders of the company at the time the various acts occurred, the plaintiff, who purchased his stock after the alleged mismanagement had been acquiesced in by the company through a period of almost two years, cannot complain, especially since his predecessor in title participated in the voidable acts : Cook on Corporations, sec. 730 ; Church v. Citizens' St. Ry., 78 Fed. Repr. 526 ; Brown v. Duluth M. & N. Ry. Co., 53 Fed. Repr. 889 ; In the Matter of the S. C. & N. Y. R. R. Co., 91 N. Y. 1 ; Kent v. Quicksilver Mining Co., 78 N. Y. 159 ; Fooks v. Southwestern Ry. Co., 1 Sm. & G. 148 ; Callanan v. Windsor, 78 Iowa, 193 ; Clark v. American Coal Co., 86 Iowa, 451 ; Cook on Corporations, sec. 730 ; Parsons v. Hayes, 14 Abbott's N. C. 419 ; In re British Seamless Paper Box Co., L. R. 17 Ch. D. 467 ; Wolf v. Shortridge, 8 Dist. Repr. 1 ; Schilling & Schneider Brewing Co. v. Schneider, 110 Mo. 83 ; United Electric Securities Co. v. Louisiana Electric L. Co., 68 Fed. Repr. 673 ; Stewart v. St. L. Ft. S. & W. R. R. Co., 41 Fed. Repr. 736 ; Venner v. Atchison T. & S. F. R. R. Co., 28 Fed. Repr. 581 ; Symmes v. Union Trust Co. of New York, 60 Fed. Repr. 830 ; Dimpfell v. Ohio & Miss. Ry. Co., 110 U. S. 209 ; Hawes v. Oakland, 104 U. S. 450 ; Alexander v. Searcy, 81 Ga. 536 ; Holmes v. Willard, 125 N. Y. 75 ; Felix, Hadley & Co. v. Hadley, 77 Law Times Rep. 131.

An assignee of corporate stock, who has not registered his stock nor obtained recognition as a stockholder, cannot bring

suit in behalf of himself and other stockholders to restrain the action of the officers of the corporation from acts alleged to be ultra vires and illegal: Brown v. Duluth M. & N. Ry. Co., 53 Fed. Repr. 890; Heath v. Erie Ry. Co., 8 Blatch, 347; Moore v. Silver Valley Mining Co., 104 N. C. 534; Bank of Commerce's App., 73 Pa. 59.

The company and its board of directors were bound to recognize the stockholders of record, as having full power to represent the shares held by them until transfer is made on the books of the company, and the pledger of stock has full right to act as a stockholder while his stock is in pledge: McHenry v. Jewett, 26 Hun, 453; McNeil v. Tenth National Bank, 46 N. Y. 325; Gilbert v. Manchester Iron Co., 11 Wend. 627; Kortright v. Commercial Bank of Buffalo, 22 Wend. 362; National Bank v. Case, 99 U. S. 628; Cook on Corp. sec. 538; Brisbane v. Delaware, etc., R. R. Co., 94 N. Y. 204; Bank of Utica v. Smalley, 2 Cowen, 770.

OPINION BY MR. CHIEF JUSTICE McCOLLUM, Jan. 7, 1901:

The bill in equity was filed on December 5, 1898, and the answers of the defendants thereto were filed on the 19th of the same month. The replication was filed February 25, 1899, and on April 4, 1899, Brown and Arrott on application to the court were allowed to become plaintiffs in the suit. On the same day the Iron City National Bank, City Savings Bank, James Callery & Company, Mary A. Schmidt, Ellen J. Schmidt, Mary T. Fuhrer, J. M. Schoonmaker, City Insurance Company and Wilhelmina Laurer petitioned the court for leave to intervene as defendants. Their request in this particular was promptly complied with. The G. W. Schmidt Company was incorporated on October 20, 1896, under the laws of Pennsylvania with a capital stock of $150,000 divided into 1,500 shares of the par value of $100 each. G. W. Schmidt was the registered owner of 1,325 shares, of which 254 shares were not held by any other party to the suit. The total number of shares represented by defendants was 1,340, and the total number of shares represented by the plaintiffs was 160. The number of shares held as unregistered pledges of G. W. Schmidt was 961. The plaintiff, J. F. Erny, was at the time he acquired his stock in the defendant company, the cashier of the German Savings and Deposit Bank

which held a certificate for fifty shares of the G. W. Schmidt stock standing in the name of G. W. Schmidt, on the defendant company's books, and pledged by him to said bank as collateral security for the payment of a certain promissory note. On or about October 20, 1898, the bank officials without notice to Schmidt of their intention to sell his stock, pledged as aforesaid, privately sold it to Erny for $100. On November 22, 1898, Erny's attorney in a letter of that date notified the G. W. Schmidt Company that its president was insolvent, and had been unlawfully permitted by the board of directors to obtain from the company about $55,000. He also accompanied with the notification a request that the company take immediate steps to bring suit against G. W. Schmidt and all the directors, to compel them to make good the amounts which Schmidt had unlawfully obtained. No effort appears to have been made by Erny or his attorney to secure a meeting of the stockholders at any time, and apart from the letter we have referred to, no evidence or other communication between them appears prior to Erny's institution of this suit. Erny appears to have been the instigator of the suit, and previous thereto to have avoided communication with the stockholders who subsequently became the defendants in it. He testified that he purchased the fifty shares of the G. W. Schmidt stock which the bank held as collateral to the promissory note; that he paid for it the sum of $100; that it then belonged exclusively to him, and there was no understanding or agreement between him and the bank by which the latter claimed any interest in the stock. As Erny had no interest in the G. W. Schmidt stock except such as he acquired by the sale of the collateral by the bank to him, it would seem that his investment of $100 was intended as a speculation. As cashier of the bank he was probably cognizant of Schmidt's financial condition and of his drafts upon the company of which he was president. Brown held a certificate of 100 shares as unregistered pledges of G. W. Schmidt. From the time of the incorporation of the G. W. Schmidt Company until the fall of 1898, he was the company's attorney, familiar with its affairs and adviser in all of its transactions. It was three months after the institution of the suit by Erny before Brown and Arrott petitioned the court for leave to become plaintiffs therein. It had the appearance of an afterthought, and

this was especially so in view of the fact that with full knowledge of the transactions which they had for a long time acquiesced in and approved, they became plaintiffs in this suit.

The essential charge in the plaintiff's bill is that the president and directors of the G. W. Schmidt Company, the secretary and treasurer and all the directors of said company during their incumbency "have been guilty of fraud, gross neglect and inattention, palpable breach of trust, wilful and fraudulent mismanagement and malfeasance in the control of the affairs and transactions of said corporation in this, to wit: that the secretary and treasurer and the directors have fraudulently and unlawfully permitted George W. Schmidt, one of the directors and the president of said corporation, unlawfully and fraudulently to secure from and appropriate moneys of the said corporation amounting in all to the sum of $50,000 or thereabouts for his own use without security, for his own personal gain, aggrandizement and benefit, and in fraud of the plaintiff's rights; the said secretary and treasurer and the said directors well knowing at the time the said moneys were secured and appropriated by said George William Schmidt that he was insolvent."

The averments in the bill which charged the G. W. Schmidt Company, its president, secretary and treasurer and all its directors with fraud were met by a positive denial, and the issue thus joined necessarily called for the production of the testimony relied on by the litigating parties to enforce their respective claims. The witnesses called by the plaintiffs to sustain their contention were Erny, who testified to the purchase of the stock as hereinbefore stated, and G. W. Schmidt who was called to testify as on cross-examination. On the part of the defendants, G. W. Schmidt was called to testify in chief. His testimony occupied more than sixty pages of the plaintiff's paperbook. The other witnesses who testified in support of the defendant's claim were Baxter, Speck, Kelly, Jr., Bennett Howley and Wescott. The witnesses called by the plaintiff in rebuttal were Brown and Marron. The testimony thus presented was carefully reviewed and considered by the learned judge of the court below. His findings of fact based on the testimony submitted to him by the contending parties were fatal to the plaintiff's claim and resulted in a dismissal of their

bill. A careful scrutiny of the testimony and of the findings of fact founded upon it, has convinced us that no tangible error was committed by the court in the conclusions arrived at. The fact that Brown held a certificate for 100 shares, and Arrott held a certificate for ten shares, as unregistered pledges of G. W. Schmidt, was not sufficient under the circumstances shown, to enable them to sustain the bill to which they became parties. It is sufficient to say of Erny that as he purchased his stock after the alleged mismanagement had been acquiesced in by the company for a period of nearly two years, he has no just cause to complain. The assignments of error are overruled.

Decree affirmed and bill dismissed at the cost of the plaintiff.