# Gilmore et al., Appellants, *v.* Gilmore Drug Co. et al.

*Corporations—Officers—Directors—Directors as trustees—Dealing in corporate funds for director's personal profit—Laches—Injunction—Fraud—Receivership—Costs.*

1. Those in control of the management of a corporation are under an inherent obligation not in any manner to use their position to advance their individual interest, as distinguished from the interests they represent.

2. A director of a corporation is a trustee for the entire body of stockholders.

3. It is an abuse of trust for a corporate director to purchase property which he knows the corporation will need, and then to sell the same to the corporation at an advanced price.

4. Where the treasurer and director of a corporation owns a majority of the stock of the company, controls its directors and executive committee and its business policy, takes the money of the company, buys real estate in his own name, and gives to the company a mortgage therefor, on which he pays no interest, he will not be permitted, against the will of the minority stockholders, to sell such real estate to the corporation for over double the amount which he paid for it, but it will be decreed that he holds the property in trust for the corporation.

5. Laches will not be imputed to the stockholders, because they delayed to act for four years, where it appears they did not have full knowledge at the time, and they promptly filed their bill within one month after they discovered the attempt to sell the property to the corporation at an extravagant profit.

6. In such case, the costs of the litigation will be imposed upon the offending director.

7. The appellate court, on reversing the action of the lower court which refused to decree that defendant held the property in trust for the use of the corporation, will not decree a receivership as prayed for, but will direct that the court below retain jurisdiction of the bill until such time as it is satisfied the minority stockholders will be fully protected.

Argued October 19, 1923. Appeal, No. 180, Oct. T., 1923, by plaintiffs, from decree of C. P. Allegheny Co., Oct. T., 1921, No. 2665, on bill in equity, in case of Anna M. Gilmore et al. v. W. J. Gilmore Drug Co., a corporation, and Samuel Dempster et al. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill for injunction. Before DREW, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs for portion only of relief prayed for. Plaintiffs appealed.

*Error assigned* was, inter alia, decree overruling various exceptions to findings of fact and conclusions of law, quoting record.

*John G. Frazer,* with him *Charles G. McIlvain,* of *McIlvain, Murphy & Mohn,* and *Edwin W. Smith,* of *Reed, Smith, Shaw & McClay,* for appellants.—Dempster holds title to the Homeopathic Hospital property either as express or constructive trustee for the company, and must convey accordingly: Porter v. Healey, 244 Pa. 427; Com. T. Ins. & Trust Co. v. Seltzer, 227 Pa. 410; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587; Douglass-Whisler Brick Co. v. Simpson, 233 Pa. 515; Old Dominion Copper Mining & Smelting Co. v. Bigelow, 74 N. E. (Mass.) 653; Bird Coal & Iron Co. v. Humes, 157 Pa. 278; Dupont v. Dupont, 242 Fed. 98; Schmid v. Theater Co., 244 Pa. 373; Hechelman v. Geyer, 248 Pa. 430; Glenn v. Kittanning Brewing Co., 259 Pa. 510.

*Ernest C. Irwin,* with him *Watson & Freeman,* for appellees.—There is no basis whatsoever for appellants' argument for a trust arising ex maleficio: Barnet v. Dougherty, 32 Pa. 371; Jourdan v. Andrews, 258 Pa. 347; Modern Baking Co. v. Orringer, 271 Pa. 152.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1924:

"The principle is well established that those in control of the management of a corporation are under an inherent obligation not in any manner to ˌuse their position to advance their individual interests, as distinguished from the interests they represent; and in Pennsylvania we have ruled that 'A director of a corporation is a trustee for the entire body of stockholders' ": Porter v. Healy, 244 Pa. 427, 435; Commonwealth Title Insurance & Trust Co. v. Seltzer, 227 Pa. 410. "Directors of a corporation are practically trustees, with the whole body of the stockholders as cestuis que trust":

2 Cook on Corporations, 8th ed. (1923), section 648. "It is an abuse of trust for a corporate director to purchase property which he knows the corporation will need, and then to sell the same to the corporation at an advanced price. This generally occurs where the director purchases in his own name land which the corporation must purchase for its enterprise": Ibid., section 660. "The rule is thoroughly embedded in the general jurisprudence of both America and England that the status of directors is such that they occupy a fiduciary relation toward the corporation and its stockholders, and are treated by courts of equity as trustees. They are regarded as agents entrusted with the management of the corporation, for the benefit of the stockholders collectively and as occupying a fiduciary relation in the sense that the relation is one of trust; and are held to the utmost good faith in their dealings with the corporation": 2 Thompson on Corporations, 2d ed., section 1215; 14A Corpus Juris 99; 7 Ruling Case Law, section 441; Savage on Formation & Management of Corporations in Pennsylvania, vol. 1, page 539.

Plaintiffs, minority stockholders, appeal from the decree of the court below refusing them part of the relief for which they pray against the treasurer of their corporation who manages and controls its affairs; they invoke in their aid the time-honored legal principles just quoted.

Summarized mainly from the findings of the court below, these are the facts: Samuel Dempster is a director and treasurer of the W. J. Gilmore Drug Company and owns or controls a majority of its capital stock. He dominates a majority of the board of directors and all the directors who constitute the executive committee of the board. He determines and controls the business and operations of the company. No reports of the action taken by the executive committee are ever made to or approved by the board of directors or the stockholders. He has refused permission to see the company's books to

the director representing the minority interest, declined to give him statements of its earnings and surplus, and on demand of a stockholder has refused to exhibit the financial condition of the corporation.

On January 5, 1917, Dempster purchased from the Homeopathic Medical and Surgical Hospital a lot of ground for a consideration of $200,000, which was paid in cash. This $200,000 was obtained by him from the treasury of the company. He claims to have received it by virtue of a resolution of the executive committee adopted at a meeting held December 28, 1916. This resolution recited: "Whereas Samuel Dempster has purchased the property in the Second Ward of the City of Pittsburgh, Pennsylvania, known as the Homeopathic Hospital property, *which property it may be necessary that this company may hereafter desire to acquire from Samuel Dempster......now, therefore,* be it resolved that $200,000 of the money of this company be loaned and advanced to the said Samuel Dempster at four and one-half per cent interest, taking as security therefor a mortgage on the property known as the Homeopathic Hospital property purchased by him." In a conversation with the minority director when inquiry was made as to the reason for the purchase of the property, Dempster stated, so this director testified, that it would be necessary for the company to move, and, that he thought it a matter of foresight to have a property on which the company could erect a building and continue its business without interruption. In a letter dated March 21, 1921, Dempster stated: "Your information in reference to the mortgage on the Second Avenue property not being recorded is correct......*The title to the property is vested in an individual,* the money being advanced for the purchase of the property to be secured by the instrument heretofore mentioned......It has been intimated that the directors did not authorize the purchase of this property which is true and it is also true that during the past several years it has been neces-

sary for me to take over many other pieces of property, ......this has been the procedure for many years and any such transactions have never been questioned *as they have all been made in the interest and for the profit of the institution."* Answering a request submitted by the defendants, the court found: "It was considered at the time the corporation might desire to purchase a property at sometime in the future, if it should be compelled to abandon its present location." Dempster executed the bond and mortgage to the company for $200,000, with interest at 4½%; it was never recorded. No interest was paid thereon. These papers have been held by him in a safe of the company since they were signed. The excuse given by him for not recording the mortgage was what he termed "trade reasons." These alleged "trade reasons" are not clear to us or valid, except the one which avows an endeavor to conceal income; in the main, they amount to the assertion that he did not want the company's customers or competitors to know it had so much money thus invested,—why he does not make plain. We think they are not the real reasons for keeping the mortgage off the record. In our view, he was speculating in the property with the company's money, not a dollar of his own having gone into it; if the property increased in value, he intended to profit at the company's expense; if it did not, his purpose was that it should take the property off his hands. His position of complete domination enabled him so to speculate at the corporation's expense without danger to himself.

The chancellor held the minority stockholders guilty of laches in challenging Dempster's right to hold the property on his own account, notwithstanding that they could not know what his purpose was, as to its ultimate disposal, until September 9, 1921, when he endeavored to foist it on the company at more than double the cost to him. They filed their bill October 1, 1921. There can be no laches in view of this action, even if laches

could be set up in such a case as this. The basis of the court's finding of laches is that the minority stockholders knew in 1917 that Dempster claimed he had purchased the property for himself. They did not know the terms of the resolution of December 28, 1916, reciting the future needs of the company for the property, and furthermore they were all women, unfamiliar with business, who would not realize what was contemplated to be done by him until he came to execute the plan of selling the property to the company at a large profit to himself. The court refused to find that the property was purchased by Dempster with the funds of the company and for it with the expectation of transferring title to it at some future time when business demands would require the construction of a new building. This we think was palpably erroneous when all the facts are taken into account.

At a meeting of the stockholders held September 9, 1921, a resolution was adopted authorizing the board of directors to ʹinstitute negotiations looking toward the purchase of the property from Dempster. The minority stockholders who were present voted against the resolution. Shortly after this action by the majority stockholders, a resolution was adopted by the board of directors authorizing the purchase at a price to be fixed by appraisement, the directors to appoint one appraiser, Dempster to appoint another and the two so selected to choose a third. The director representing the minority voted against the adoption of this resolution. No appraiser was appointed by the board. In determining the value of the property, the appraisers fixed it as of the date of their appraisal, which was after a proceeding in which benefits had been assessed against it. The appraisers placed the value at $404,277, *the vendor to pay all assessments.* At the meeting of the stockholders held September 23, 1921, a resolution was adopted (the minority stockholders present voting adversely) to purchase the property for the sum of $404,277, *the company*

*to assume in addition as part of the purchase money such benefits as should be assessed against it.* The amount of the assessment was $45,933, making the total price to be paid $460,210.

The court determined as a matter of law that the meeting of the stockholders held September 9, 1921, was not legally called, owing to the fact that no sufficient notice had been given and that the actions of the majority stockholders, including the election of the board of directors, were invalid; that the directors then chosen were not legally elected, and that all subsequent actions of the board were without validity; that the meeting of the stockholders held September 23, 1921, was not properly called, no adequate notice thereof having been given; that what was done by the majority stockholders at that meeting, including the passage of the resolution authorizing the purchase of the property, was invalid; that the sale by Dempster to the company would be a fraud upon the plaintiffs and that they were entitled to an injunction restraining the consummation of the sale. The chancellor declined, however, to determine that Dempster held title to the property in trust for the company, or to enter a decree directing him to convey to it upon payment to him of the amount expended during the period while he held title and upon the assumption by the company of the benefits assessed.

If the principles quoted at the outset of this opinion, intended to promote fair dealing by corporate officers with the corporation and its stockholders are not to be thrust aside, such conduct as that we have outlined calls for full redress by a court of equity when it is asked by stockholders whose rights are affected to protect them. We are not disposed in the slightest degree to minimize or weaken these principles. In our opinion it was convincingly established by the written and other evidence which has been adverted to, considering it in the light of the rule of conduct which must be applied to corporate officers, that the purchase of the property by Dempster

with the company's money was for its account, and it should be adjudged that he holds the property, not in his own right, but as trustee for the corporation; the failure of the court below to so determine was error.

We also conclude that Dempster's course of conduct toward the minority stockholders indicates a disregard of their rights which cannot be sanctioned. We, however, do not deem it proper that the prayer for the appointment of a receiver should be fulfilled, but that the court should retain jurisdiction of the bill, until such time as it is satisfied the rights of the minority stockholders will be fully protected.

The decree directed that the costs should be paid by the W. J. Gilmore Drug Company. Under the circumstances, we think this was a wrong determination. The litigation became necessary because of the failure of Dempster to properly measure and discharge the duties he owed to the company and its stockholders; for this reason, he should pay the costs.

The first, fourth, sixth, seventh, tenth, twelfth, thirteenth, fifteenth, and sixteenth assignments of error are sustained and it is directed that the court below shall enter a decree ordering and commanding the defendant, Samuel Dempster, to convey the property in question to the W. J. Gilmore Drug Company by deed of special warranty, free of liens and encumbrances, upon payment to him by the company of the net amount, with interest, expended by him on the property during the period while title thereto has been held in his name, and upon the assumption by the company of such benefits as may be finally assessed against the property by reason of the widening of Second Avenue, and that the defendant, Samuel Dempster, shall pay all the costs.