Bonini et al., Appellants, *v.* Family Theatre
Corporation et al.

Argued May 10, 1937.   Before SCHAFFER, MAXEY,
LINN, STERN and BARNES, JJ.

*John W. Conrad,* of *Conrad & Conrad,* with him *Fred W. McFarlin,* for appellants.

*Henry Hipple,* with him *A. J. Straub,* for appellees.

OPINION BY MR. JUSTICE MAXEY, October 8, 1937:

Appellants, plaintiffs in the court below, are stockholders and directors of the Family Theatre Corporation. They filed a bill in equity against it, against other directors, both past and present, and against other corporations in which the individual defendants have an interest, to enjoin the wasting of the corporation's assets, to cancel certain stock, for an accounting and for certain other relief. The learned Chancellor of the court below ordered defendants F. A. Hauber, A. J. Hauber and Bayer to account to plaintiffs, but dismissed the bill as to the corporate defendants and as to Stackpole, Straub and Hall, individual defendants. Appellants complain of the dismissal of the bill as to the latter three individuals.

It is not necessary to restate the voluminous averments of bill and answer. Extended hearings were held and a large record was made, resulting in sixty-two findings of fact, to which ninety-four exceptions were filed by plaintiffs. In dismissing the exceptions, the court below made nine additional findings of fact. The gist of its findings is as follows:

The controversy arose out of the mutual dealings between the two plaintiffs, Bonini and J. S. Hauber, together with one Jacob Mallison, and their business associates, defendants F. A. Hauber, A. J. Hauber, and Bayer. In 1911 they formed a partnership for the construction of a three-story building in St. Marys, Pa., to be used as a theatre and dance hall, and for the renting of store space. At first their interests were unequal, but

by conveyances in 1919 each of the six obtained an equal undivided interest in the property. In 1923 the business was incorporated. Each party became a director and received 70 shares of common stock out of a total authorized issue of 420 shares. Authority was voted in addition to issue preferred stock. There was no agreement then or at any time that equality of stock holdings would be maintained among the parties, as alleged by plaintiffs.

At no time thereafter was there any authorization by the stockholders for the issuance of additional shares of common stock, or for conversion of preferred shares into common, which alone were entitled to voting privileges. Nevertheless, in 1926 a share of preferred stock was issued to W. S. Georgia, by him transferred to F. A. Hauber, and a share of common stock issued in its place and likewise assigned to F. A. Hauber, increasing his *de facto* holdings to 71 shares. This share of common stock was issued without any authorization whatever, and no opportunity was given other stockholders to increase their holdings proportionately.

By the beginning of 1929 factional differences had arisen between the six incorporators, plaintiffs and Mallison being arrayed on one side and F. A. Hauber, A. J. Hauber, and Bayer, three of the defendants, on the other. A stockholders' meeting was held in February, 1929, for which there was no previous notice of any special purpose in contemplation. Plaintiffs attended and participated in the meeting. At the meeting the defendants mentioned summarily adopted, by a vote of 211 to 210, a resolution reducing the number of directors from six to three and elected themselves sole directors. As directors they then proceeded to authorize the issuance of six additional shares of common stock to Bayer, with an option to purchase five more shares, although such action was wholly without legal justification.

In December, 1929, plaintiffs and Mallison brought a mandamus proceeding to secure their reinstatement as

directors. By a so-called "acceptance of decree," entered December 30, 1929, they were duly reinstated as such. On the same day a stockholders' meeting was held, at which defendants F. A. Hauber, A. J. Hauber, and Bayer voted 218 shares for an amendment to the by-laws increasing the number of directors of the Family Theatre Corporation to a total of seven; F. A. Hauber voted one share illegally acquired and Bayer seven. These defendants then elected themselves and an associate, Rupprecht, directors, at the same time complying formally with the consent decree, entered the same day, to the extent of likewise electing plaintiffs and Mallison to the board. By this means it was assured that they could dominate the corporation with the aid of Rupprecht. The learned Chancellor specifically found that the unauthorized common stock was issued by defendants for the express purpose of obtaining control of the corporation.

After the meeting of December, 1929, plaintiffs and Mallison continued to be elected directors of the corporation and remained directors when the suit was brought in May, 1932. They were regularly notified of meetings of the board, but refused to take any part in the management of the business. The Chancellor found that, contrary to their claims, they at no time were denied access to the corporate books and records. During that period following 1929 the business of the corporation, which was principally the operation of the moving picture theatre located in the building, suffered a drastic decline. Nevertheless, plaintiffs declined to attend any meetings, of stockholders or directors, except one directors' meeting in May, 1930, and a stockholders' meeting in February, 1932. At the former they refused upon request to give any advice as to the conduct of the business. At the latter they presented a written protest having to do only with the equality of division of the stock, and no objection to action taken by the board of directors was presented. Plaintiffs took no legal action to have the

illegal stock declared void or to protect their rights in any other way, except for the mandamus proceeding in 1929, until the commencement of this suit.

Meanwhile another moving picture theatre had been opened in St. Marys and was operating successfully by the St. Marys Amusement Company. Of this corporation defendants Stackpole, Straub and Hall were officers and directors, but held only a minority stock interest. On July 8, 1930, after negotiations lasting several weeks, F. A. Hauber, A. J. Hauber and Bayer sold their stock in the Family Theatre Corporation to Stackpole, Hall and Straub. The Chancellor found that the latter were wholly ignorant of the agreement, alleged by plaintiffs, that stock parity between the six original stockholders should be maintained, and that their purchase of the stock was not for the purpose of closing the theatre so as to eliminate competition with its competitor, the St. Marys Theatre, in which they had a substantial financial interest; but that, on the contrary, they made every effort to operate the Family Theatre at a profit after July 8, 1930, but without success. Stackpole, Straub and Hall had only meagre information as to the financial condition of the Family Theatre when they bought out the other defendants. They maintained the theatre for approximately a week, and when they found that it could not be profitably operated, they held a directors' meeting on July 14, 1930, and after electing themselves directors in place of those from whom they had purchased their stock, voted to close down the theatre. This was immediately done. In the latter part of July, 1930, the theatre furniture and fixtures were sold, and in August the corporation leased to the St. Marys Amusement Company the portion of the building which had been used as a theatre.

The Chancellor completely exonerated Stackpole, Straub and Hall of any fraudulent misconduct or breach of trust as respects plaintiffs. He found that when they bought into the company their actions pur-

suant thereto were in entire good faith, in an honest effort to preserve the entity of the Family Theatre and operate it with commercial success; it could not be profitably operated, however, and good business judgment required abandonment of the theatre.

On the basis of the above findings the court below held that the additional common stock purporting to have been issued to F. A. Hauber and to Bayer was unauthorized, fraudulent and illegal; that plaintiffs and Mallison were wrongfully ousted from the board of directors in February, 1929; and that as a consequence these defendants and A. J. Hauber must account to plaintiffs for their misconduct and breach of trust during the period of their management of the business from February 11, 1929, to July 14, 1930. An accounting was ordered against these defendants which at the time of this appeal had not been had. The court found, however, that plaintiffs were estopped by acquiescence and failure to dissent from questioning the acts of the other individual defendants, Stackpole, Straub and Hall, for the subsequent period up to the time of the hearing, during which the latter were in control of the business; that these defendants acquired 218 shares of the legally issued common stock of the Family Theatre Corporation; and that the defendants mentioned were guiltless of fraudulent intention or conduct. Consequently as to them, and as to the corporate enterprises in which they have a financial interest, the bill was dismissed.

The bill is still pending against defendants F. A. Hauber, A. J. Hauber, and Bayer. As to them no final decree has been entered. The decree which was entered directed them to account to appellants for damage caused by their fraudulent misconduct and breach of trust for the period between the date when plaintiffs were ousted from the board of directors, February 11, 1929, and the date when defendants ceased to have an interest in the corporation by reason of the sale of their stock on July 8, 1930. Since this accounting has not

been had, we disregard those assignments of error which relate to appellants' right to relief against these defendants. Appellants' sole contention on this appeal is that the decree of the court below erred in dismissing the bill as to the other individual defendants, Stackpole, Straub and Hall. The only pertinent assignments of error are as to this portion of the decree, which was final as to the defendants named.

The court below justified its action in dismissing the bill as to these defendants on the grounds of laches or estoppel, and of failure of the evidence to establish fraud or breach of trust on the part of Stackpole, Straub and Hall.

From the date of the "consent decree," December 30, 1929, appellants did nothing to protect their rights as stockholders and directors. Whether the court below was correct in finding that on that date they were legally elected directors, appellants evidently considered themselves such, for they so referred to themselves in the protest which they submitted at the stockholders' meeting held February 1, 1932. In spite of the position of trust which they held, they refused to attend meetings, to give advice as to policies which the corporation should pursue in a period of stress and declining profits, or to participate in any way in the management of the enterprise. They did nothing to clarify their position, from a time long prior to the date when appellees acquired an interest in the company to a time long after this had taken place. As the learned chancellor aptly said, in dealing with this phase of the case: "From this time [December 30, 1929], and until the stock of the Hauber group was sold to the Stackpole group, it is evident that extreme difficulty was experienced in the conduct of the business of the Family Theatre Corporation. Said corporation had been losing money, and continued to do so. During this period proposed sale of the stock was discussed among the various members of the original incorporators. At a meeting in the spring of 1930 Bonini

told the Hauber group to sell their stock if they saw fit. Subsequent to the election of the seven directors the plaintiffs did not question the validity of their election; did not question the validity of the issuance of the eight additional shares of common stock, nor did they take any proper legal action raising those questions until the filing of this suit, upon May 11, 1932. It is evident that the plaintiffs were willing to sell their stock to the Stackpole group, provided they were able to obtain their price. The Stackpole group purchased the stock of the Hauber group in July, 1930, in entire good faith, and as bona fide purchasers. Thereafter they acted in the conduct of the business affairs of the said corporation, using their best business judgment to obviate any further financial loss. During all this period the plaintiffs were directors, and had stood by, acquiescing in the actions of the majority of the Board of Directors, and without any material protest. They were requested to give advice to the management of the corporation, and refused to do so. Under such circumstances we are of the opinion that the conduct of the plaintiffs was such as to estop them from contending that the Stackpole group did not purchase 218 shares of stock of the Family Theatre Corporation. It was the duty of the plaintiffs, upon their reinstatement in December, 1929, to immediately bring legal action if they considered that their rights had been affected, and by failing to do such, by their silence, they acquiesced in the acts performed by the other directors."

It has been many times held that when stockholders stand by without objection or protest and permit the directors of a corporation, acting in good faith, to exceed their authorized powers in acting for the benefit of the corporation, they will be held to have acquiesced in the acts of those conducting the business and will not thereafter be heard to complain of the want of authority. In *Watts's Appeal,* 78 Pa. 370, 394, this court said: "First, that when an act done by directors is in excess of their

authority, yet has been done with the bona fide intent of benefiting the corporation which they represent, and a shareholder knowing thereof does not dissent within a reasonable time, his assent to the act will be presumed, and he will be estopped from gainsaying it. For his silence, when he ought to speak, is such a neglect of duty towards those who are gratuitously serving his company, that he is entitled to no consideration in a court of justice. Second. That when the act complained of is to be followed by a large expenditure of money, the shareholder should not only file his protest within a reasonable time, but should follow up the same by active preventive means. For it is obviously against good conscience, that one having the power to prevent it should stand by and see his associates expend money, that may result to his benefit, and afterwards charge them therewith. He may not thus pocket the gain resulting from his delay or thus wait in order to observe the result of the experiment, and when it fails to produce the result expected, fall back upon his protest as a saving of his legal remedies. His neglect to act at the proper time bars his right of action as effectually as his neglect to protest."

To the same effect are *Graff v. Williamsport Water Co. et al.,* 312 Pa. 255, 167 A. 341; *Com. ex rel. v. Reading Traction Co.,* 204 Pa. 151, 53 A. 755; *Erny v. G. W. Schmidt Co.,* 197 Pa. 475, 47 A. 877; *Balliet v. Brown,* 103 Pa. 546; *Ashurst's Appeal,* 60 Pa. 290. "It is an inherent doctrine of equity jurisprudence that nothing less than conscience, good faith, and reasonable diligence can call courts of equity into activity, and that they will not grant aid to a litigant who has negligently slept on his rights and suffered his demand to become stale where injustice would be done by granting the relief asked. It is therefore a general rule that laches or staleness of demand constitutes a defense to the enforcement of the right or demand so neglected. . . .": *Kinter v. Com. Trust Co.,* 274 Pa. 436, 441, 118 A. 392. "The stock-

holders are the only persons who can object to an unwarranted exercise of authority. If they remain silent, after a lapse of time, they will be presumed to have ratified the act": *Fredericks et al. v. Penna. Canal Co.,* 109 Pa. 50, 55, 2 A. 48.

Appellees, at the time of their purchase of stock, knew nothing of appellants' claim that eight shares of it were issued without proper authorization or the requisite corporate action. Nor were they compelled to inquire into the validity of the stock represented by the certificates transferred to them, when the same were on their face in proper form with all the indicia of duly authorized issuance: *Greensburg T. & T. Co. v. Aspinwall-Delafield Co.,* 266 Pa. 160, 109 A. 631. The corporation appears by its charter to have had the necessary power to issue the additional shares, and the only defect was the lack of appropriate action by a majority of the board of directors. We do not think such a defect can now be taken advantage of by parties in the position of appellants; as to appellees, bona fide purchasers, an estoppel is invoked by acquiescence in the status quo and failure to make timely objection: 11 Fletcher, Cyclopedia of the Law of Private Corporations (Revised ed.), 362, sec. 5169; *Allen v. South Boston R. Co.,* 150 Mass. 200, 22 N. E. 917; *Hinds County et al. v. Natchez J. & C. R. Co. et al.,* 85 Miss. 599, 38 So. 189.

It was shown that appellees Stackpole, Straub and Hall, besides being stockholders of the rival theatre concern, St. Marys Amusement Company, were likewise officers and directors. Appellants urge, therefore, that the usual rule impeaching the good faith of dealings between corporations with common directors should here be applied. So far as the record indicates, the only transaction between the Family Theatre Corporation and the St. Marys Company was the leasing of the theatre by the former to the latter. Appellants did not in their bill specifically request cancellation of this intercorporate transaction, nor did the evidence show that it

resulted in damage to the Family Theatre or to appellants' interest therein. By the lease, the St. Marys Company acquired the portion of the premises formerly used for a theatre at a rental of $100 a month plus whatever net profits over and above that amount might be realized by the lessee. If this lease benefited either party, it was certainly the Family Theatre Corporation, not the St. Marys Company. There was no conclusive evidence that a better rental could have been secured. The court below found the lease was made at the instigation of appellees, in good faith, without any suggestion of fraudulent intent. The rule laid down in *Merchantile Library Hall Co. v. Pittsburgh Library Assn.*, 173 Pa. 30, 33 A. 744, and *South Side Trust Co. v. Washington Tin Plate Co.*, 252 Pa. 237, 97 A. 450, requires that transactions between corporations with interlocking directorates be declared invalid only where, on close scrutiny, fraud or unfairness is revealed. In this instance the court below considered the details of the intercompany dealings with scrupulous care and found, on competent evidence, that no fair or reasonable objection could be offered by appellees. In such case the decisions cited have no application. Nor does the case of *Penna. Knitting Mills v. Bayard et al.*, 287 Pa. 216, 134 A. 397, relied upon by appellants, holding that where two corporations have a majority of directors in common, transactions between them are presumptively fraudulent. In the case at bar appellees were a majority of the directors of neither corporation; and the evidence sufficed to overcome any implication of fraud.

The same general observations apply to the contention, urged throughout the controversy, that it was a fraud and breach of trust on the part of appellees to close and dismantle the Family Theatre, sell its furnishings and rent its quarters. The findings of fact reached by the Chancellor after consideration of the evidence presented are a sufficient answer to this charge. Appellees served no private interest in doing what they did.

They knew nothing of the business venture when they bought into it; they had not investigated its financial background. Their purpose was to secure coöperation between the two moving picture theatres in St. Marys, with the view of obtaining a reduction in film rates from producers and of possibly reclassifying the two theatres for the exhibition of different grades of pictures. They believed that a combination of management would decrease costs of operation in both theatres. After purchasing their stock, they examined the books and property of the corporation and tested its profit-producing capacity by operating the theatre for a period which, though short, was adequate to show that a profit could not be made. The evidence showed that the corporation had sustained a severe operating loss for the year 1929, and for each month in 1930 up to the time of appellees' acquisition of their stock interest. No funds were on hand and improvements, which were imperative, would have required a large outlay. Under the circumstances, as the Chancellor found on ample evidence, the closing of the theatre was demanded by the operating conditions of the business, and for appellees to have carried on in the face of such an adverse tide of events would have been little short of foolhardy. His findings, in the absence of any abuse of discretion, must here be accepted. This being so, we find no room for the application of the principle that a director of a corporation, faithless to his trust, will be held liable for resulting damage at the suit of an injured stockholder. Hence this principle, as expressed in *Spering's Appeal*, 71 Pa. 11; *Watts's Appeal*, 78 Pa. 370, supra; *Glenn v. Kittanning Brewing Co. et al.*, 259 Pa. 510, 103 A. 340; and *Gilmore v. Gilmore Drug Co.*, 279 Pa. 193, 123 A. 730, cannot here be invoked.

It follows that as to appellees Stackpole, Straub and Hall, appellants have no just cause for complaint. The decree of the court below is accordingly affirmed, at the cost of appellants.