### GRANT et al. v. COBRE GRANDE COPPER CO. et al.

(Supreme Court, Appellate Division, First Department. June 12, 1908.)

1. CONTRACTS—ACTIONS—PLEADING—PERFORMANCE AND WAIVER—SUFFICIENCY OF ALLEGATIONS.

An allegation of performance of a contract made in the alternative is not a sufficient allegation either of performance or of waiver, and, in a suit to enforce rights claimed under an option contract to purchase, an allegation that plaintiffs had made all payments required by the contract and had performed all agreements and conditions thereunder, or such payments and conditions had been theretofore waived by the parties, was not a sufficient allegation of either performance or waiver.

2. PROCESS—SERVICE—PUBLICATION—CONDITIONS PRECEDENT—SUFFICIENCY OF COMPLAINT.

Code Civ. Proc. § 438, provides that an order directing the service of summons upon a defendant without the state, or by publication, may be made where the defendant is a foreign corporation, or the complaint demands that defendant be excluded from a vested or contingent interest in specific property within the state, or that such interest in favor of either party be enforced. Section 439 provides that the order must be founded on a verified complaint showing a sufficient cause of action against the defendant to be served. The C. Company, a foreign corporation, of which plaintiffs were stockholders, agreed with defendant G. to erect a smelter on mining claims in Mexico, owned by the latter, to work the mines, and to pay him monthly a certain percentage of the net profits for the previous month, and G. executed deeds in escrow to the properties to be delivered when plaintiffs' company performed the conditions of the contract, which provided that, on the failure of that company to perform the provisions thereof, G. might, at his option, forfeit its rights thereunder, and the property should then revert to him, and G. thereafter conveyed the property to another company, claiming the C. company had forfeited its rights under the contract by failure to make the agreed payments. Plaintiffs brought this suit on behalf of all the stockholders, the corporation refusing to sue, to have G.'s transferee declared a trustee of the property for plaintiffs' company, and to compel an accounting, and made the C. company a party defendant, it being served with summons by publication, but the complaint did not allege that the C. Company had made the payments to G. required under the option contract, or that such payments had been waived. Held that, to support the order of service, it was necessary, not only that the defendant corporation be a foreign corporation, but that the complaint demand judgment that an interest in property within the state in favor of either party be enforced, and that the complaint show a cause of action, and, as plaintiff's cause of action depended upon the equitable rights of the C. Company under the option contract, and the complaint did not allege that it had performed the conditions of that contract, it did not show a cause of action in plaintiffs, and hence service by publication was improperly made on the C. Company within the statutes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Process, § 104.]

3. SAME—MOTION TO VACATE SUMMONS—EFFECT—ADMISSION OF FACTS.

On a motion to vacate an order directing service of summons by publication upon a foreign corporation, on the ground that such service was not authorized under Code Civ. Proc. §§ 438, 439, relating to service of

summons by publication upon a defendant without the state, in that the complaint did not show a cause of action in favor of plaintiffs, as required by section 439 in such cases, every well-pleaded allegation of fact in the complaint stands admitted.

Ingraham and Laughlin, JJ., dissenting.

Appeal from Special Term.

Suit by James A. Grant and others against the Cobre Grande Copper Company, impleaded with William C. Greene and others, to have a trust declared in certain property and to compel an accounting. From an order denying a motion to vacate an order directing service of summons upon the first-named defendant by a publication (111 N. Y. Supp. 1089), it appeals. Order reversed, and order of publication vacated.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

F. W. M. Cutcheon. (M. E. Harby and Augustine L. Humes, on the brief), for appellant.

Walter B. Raymond (Samuel S. Watson and Chester A. Jayne, on the brief), for respondents.

CLARKE, J. Specially appearing for the purpose of the motion, the Cobre Grande Copper Company moved to vacate an order for the service of the summons upon it by publication, and, said motion having been denied, appeals. This is a stockholders' suit brought by the plaintiffs on behalf of all other stockholders of the Cobre Grande Copper Company, an Arizona corporation, similarly situated, for the purpose of procuring a decree adjudging that the Cananea Consolidated Copper Company, a Mexican corporation, holds the legal title to certain mines and mining properties in the Republic of Mexico in trust for the Cobre Grande Copper Company, and of compelling the defendants William C. Greene, the Greene Consolidated Copper Company, and the Cananea Consolidated Copper Company to account for and pay over to the defendant Cobre Grande Copper Company all benefits of every kind, if any, derived by them or any of them from any of the said properties and of obtaining other like relief.

The papers sufficiently disclose that the Cobre Grande Copper Company is a foreign corporation, and that, after due diligence, the plaintiff has been unable to serve it or any of its officers with the summons in this state, and that it will be unable so to do. The order appealed from is attacked upon the ground that it was improperly granted upon the face of the papers. Section 438 of the Code of Civil Procedure provides that:

"An order directing the service of a summons upon the defendant without the state, or by publication, may be made in either of the following cases: (1) Where the defendant to be served is a foreign corporation. * * * (5) Where the complaint demands judgment that the defendant be excluded from a vested or contingent interest in or lien upon specific real or personal property within the state; or that such an interest or lien in favor of either party be enforced, regulated, defined or limited; or otherwise affecting the title to such property."

Section 439 provides that:

"The order must be founded upon a verified complaint showing a sufficient cause of action against the defendant to be served, and proof by affidavit of the additional facts required by the last section. * * *"

From the complaint and the exhibits thereto attached it appears that option agreements from William C. Greene to George Mitchell, both of Arizona, were executed on November 26, 1898. These took the form of an escrow constituted by the execution of the deeds of properties described in the complaint, and the deposit of those deeds with the Phœnix National Bank of Phœnix, Ariz., to be held by it and delivered in accordance with the terms of the accompanying escrow agreements which provided for the payment of $12,500 in cash and $237,500 in deferred installments. On the same day was executed a license agreement by Greene to Mitchell to enter upon and work the mines described in the deeds deposited in escrow. The deed contemplates the payment by Mitchell of the amounts stipulated in the deeds, which are again set forth. Mitchell also covenanted as follows:

"(A) To erect a smelter described, within six months. (B) To pay Greene fifty per cent. of the net proceeds of all ore shipped, such payments to be made monthly upon an accounting to be made to Greene with reference thereto on the 15th day of the month. (C) That Greene shall have free access to the workings of the property and all books, accounts and papers concerning the same at all times."

The agreement contained the following provision:

"It is further agreed that, in case either party fails or neglects to keep any of the provisions or conditions on his part herein to be performed, the other party may, at his option, elect to consider the same as a forfeiture of the terms or conditions of this contract and all rights of the respective parties thereunder; and, in the event that said party of the second part fails or neglects to make any of the payments in said escrow agreements 1 and 2 provided, then the said escrow agreement, together with this contract, shall thereby be rendered null and void, and all the property therein described shall immediately revert to the party of the first part, together with the plant thereon."

On April 15, 1899, Greene executed a trust agreement with Mitchell, which set forth that whereas Greene has a permit from the Mexican government allowing him the privilege of owning property within the frontier zone of 20 leagues, which said permission is necessary in order to enable foreigners to own property within said frontier zone, it is agreed that, upon compliance with the terms of said escrows, the said Greene shall continue to hold the title of said property as a trust for the said Mitchell or his assigns until such time as the said Mitchell or his assigns may demand a deed therefor. Under date of May 26, 1899, Mitchell assigned to the Cobre Grande Copper Company, which had been incorporated on the 25th of April, 1899, all of Mitchell's right, title, and interest held by him individually or in trust in and to the said escrow agreements and the property therein described, and also all the improvements, mills, furnace, machinery, and personal property of every kind and nature situate on, at, or near the said property.

An agreement between Greene and the Cobre Grande Copper Company, dated July 22, 1889. This agreement recites the escrow agree-

ments, the organization of the Cobre Grande Copper Company, the transfer of his rights by Mitchell to that company, Greene's ownership of certain mining claims not covered by the escrow agreements, an understanding between Greene and Mitchell that, if the escrow agreements are fully carried out by the Cobre Grande Copper Company, as the assignee of Mitchell, Greene will convey to Mitchell or the Cobre Grande Copper Company the additional properties described in this agreement, and provides that the Greene-Mitchell contract of November 26, 1898, shall remain in full force, except as modified by this agreement. The modifications provided for concern the terms of payment and the method of accounting as to the net proceeds of the ore shipped. It was provided that the deferred payments shall be made as follows: $37,500, November 26, 1899; $50,000, November 26, 1900; $50,000, November 26, 1901; $50,000, November 26, 1902; and $50,-000, November 26, 1903; that the Cobre Grande Copper Company should pay to Greene 50 per cent. of the proceeds of all ore shipped by that company, an accounting to be had on the 15th day of each month, based on the net returns for the previous month. It defined net proceeds, and provided that the payments should be made at the office of the Greene Consolidated Copper Company in gold coin or in New York exchange on the 15th day of each month. It also provided for the substitution, upon demand, of new and formal deeds for those already executed. This agreement continued in force the defeasance clause of the original license contract. The escrow agreements were not affected by it, and the provision for the conveyance of the additional property described in the agreement was made expressly subject to the condition that the Cobre Grande Copper Company should comply with all the conditions of the previous contracts above mentioned. It is alleged that on July 20, 1899, Greene sold the Eliza mine to the Cobre Grande Company, and accepted from it in payment therefor four promissory notes for the aggregate sum of $100,000 payable at yearly intervals commencing July 24, 1901, and that pursuant to said sale the Cobre Grande Company became the equitable owner of said mine. It also alleges that the said defendant Greene continued to hold the title thereto in trust for and on account of the defendant Cobre Grande Company. It is not alleged that any of these notes were paid or any conditions upon which the alleged trust to be executed were performed.

. Deed from Greene to Cananea Consolidated Copper Company, dated October 11, 1899. This conveyance transferred all of the mines referred to in the foregoing agreements and other property to the Cananea Consolidated Copper Company in fee simple, and it expressly recited the Mitchell license agreement and escrows and the provisions with reference to termination for nonfulfillment declared that those contracts had not been performed, and that Greene considered the same to be void and of no effect. It provided that in case, by reason of the execution of this deed to the Cananea Company, Greene should nevertheless incur any legal responsibility, the Cananea Company would indemnify him against the same, and Greene transferred to the Cananea Company all of his claims of every kind whatsoever against

the Cobre Grande Copper Company. The complaint does not allege
that at the time this deed was executed, or at any time thereafter, the
Cobre Grande Company had performed the conditions of any of the
agreements under which the plaintiffs claim it is entitled to recover.

If the cause of action is one to establish a trust of real estate, and
incidentally to obtain an accounting with reference to the income, or
as an action for an accounting as to the income of an alleged trust and
incidentally for a declaration of trust, the alleged rights of the Cobre
Grande Copper Company, which the plaintiffs are attempting to assert,
depend upon the continued existence of an option right to purchase the
properties in question, and the right to hold possession thereof under
the agreements collateral to the option. As the escrow agreements were
mere option contracts entitling the Cobre Grande Copper Company,
upon making certain payments, to receive conveyances of the property,
it is necessary that the complaint should show either that the payments
required to be made in order to entitle the Cobre Grande Company to
a delivery of the deeds were made or that facts should be alleged show-
ing a modification or waiver of these conditions, so that it may appear
that such rights have actually accrued to the Cobre Grande Company.
Since it appears that all the contract rights of the Cobre Grande Cop-
per Company, independently of the escrow agreements, were to cease
at Greene's election upon its failure to perform any of the covenants
contained in the license agreement of November 26, 1898, as modified
by the agreement of July 22, 1899, and as it expressly appears that
Greene claimed default had occurred, and attempted to exercise his
election to terminate the rights of the Cobre Grande Copper Com-
pany, it was necessary, in order to make out a cause of action, that
the pleader should allege that the Cobre Grande Copper Company had
duly performed all of the covenants and conditions of the license agree-
ment with Greene of July 22, 1899, or should set up the facts estab-
lishing a waiver thereof. The only allegation of the complaint con-
cerning performance by the Cobre Grande Company of the contracts
which the plaintiffs claim in its behalf is as follows:

"That the $37,500 payable on November 26, 1899, as part of the purchase
price of said mines and mining properties conveyed by the defendant Greene
to the defendant Cobre Grande Copper Company by agreement dated July 22,
1899, plaintiff's Exhibit C, and all other payments therein specified and pro-
vided to be made and paid, and all agreements and covenants and things to
be carried out, done, and performed by the defendant Cobre Grande Copper
Company under said agreement dated July 22, 1899, and including the pay-
ment of notes given as the purchase price of the Eliza mine, were paid, made,
done, and performed at the time and in the manner provided in said agree-
ments and by or for the account of the defendant, Cobre Grande Copper Com-
pany, or the payments and conditions thereof were waived, or settled in time
and in manner agreed upon and accepted by all parties in interest, and the
funds to make said payments and to carry out, do, and perform the agree-
ments, covenants, and things to be carried out, done, and performed by or on
account of the defendant Cobre Grande Copper Company, as aforesaid, were
raised and provided and obtained and secured upon the faith, credit, and
pledge of the said mines and mining properties of the defendant Cobre Grande
Copper Company, and from the income and profits of said mines and mining
properties of the defendant Cobre Grande Copper Company."

This is not an allegation that the covenants or conditions of any of
the agreements were performed or that they were waived; that the

payments provided for in the escrow agreements, as modified, were made or that they were waived. An allegation of performance made in the alternative is not a sufficient allegation either of performance or of waiver.

This court said in Todd v. Union Casualty & Realty Company, 70 App. Div. 52, 74 N. Y. Supp. 1062:

"The complaint is also fatally defective in another respect. * * * To entitle the plaintiff to recover, he must show that he has performed all the conditions of the policy upon his part to be performed, or that performance has been waived, and this he does not do by alleging that he has complied with the policy in that respect, except where the same has been waived. If he has performed, then that fact must be alleged without qualifications. If he has not performed for the reason that defendant waived performance, then the conditions waived, and the facts and circumstances constituting such waiver must be alleged."

This case was cited and followed in Pope Manufacturing Company v. Rubber Goods Manufacturing Company, 110 App. Div. 341, 97 N. Y. Supp. 73, this court saying:

"Facts must be stated from which it may be determined whether or not the legal conclusion of waiver follows."

It seems to me, as the entire cause of action attempted to be set up in the complaint, from any point of view thereof which may be taken, is based absolutely upon the alleged equitable rights of the Cobre Grande Copper Company in and to the mines and mining properties in Mexico, title to which it claims was held in trust for it, that when it sets up its alleged chain of title and it appears that each and every one of the documents relied upon contained conditions precedent, with provisions avoiding the same upon default, it is absolutely essential that the complaint should allege due performance or set up the facts necessary to establish a waiver. The jurisdictional fact in section 439 of the Code of Civil Procedure is that the order must be founded upon a verified complaint showing a sufficient cause of action, and while, on such motions, it may be that we do not search the complaint as upon demurrer, still, when an absolutely necessary element of a cause of action is wanting, it cannot be said that the order is based upon a complaint showing a sufficient cause of action. This court said, by Mr. Justice McLaughlin, in Montgomery v. Boyd, 60 App. Div. 133, 70 N. Y. Supp. 139, citing many cases:

"It must appear from the complaint filed that the plaintiff has a sufficient cause of action against him, or that there is specific property within the state belonging to him, or in which he has an interest, from which the judgment in the action, when recovered, may be satisfied. * * * So far as we have been able to discover, it has been uniformly held that in order to justify an order directing service by publication, or personally without the state, the complaint upon which the order is based must show that the plaintiff has a cause of action."

But it is objected that the Cobre Grande Company is a mere nominal defendant, and that it is not necessary under such circumstances that a cause of action should be stated against it. The plaintiffs, as stockholders, do not sue in their own rights and for their own benefit. The

cause of action which they attempt to allege is one belonging to the Cobre Grande Company, and their right to sue grows out of the fact that the Cobre Grande Company has declined to bring the action in its own name. As it has declined to sue, it is made a party defendant. Being a party defendant, a cause of action must be stated against it. That cause of action is that the Cobre Grande Company, having a good cause of action against the other defendants, upon request by certain of its stockholders to bring an action to enforce that right, has declined to do so. Therefore the plaintiffs' cause of action against it is that, having a good cause of action, it has neglected and refused to enforce it. So that, if it does not appear that the Cobre Grande Company has a good cause of action against the other defendants, why, then, it must follow that the plaintiffs have no good cause of action against it. Therefore the very basis of this suit, the very crux of this situation, is that a good cause of action has been set up in favor of the Cobre Grande Company against Greene and the Cananea Copper Company.

To support the order appealed from, it is necessary that the moving papers should establish, not only that the defendant is a foreign corporation, but that the complaint demands judgment that a vested or contingent interest in or lien upon specific real or personal property within the state in favor of either party be enforced, regulated, defined, or limited, or otherwise affecting the title to such property. In Chesley v. Morton, 9 App. Div. 461, 41 N. Y. Supp. 463, on appeal from an order vacating an order directing the service of the summons by publication, in an action brought by an administrator appointed in this state against a resident of Massachusetts for an accounting of a copartnership formerly existing between plaintiff's decedent and the defendant, Mr. Justice Barrett, after citing the provisions of sections 438 and 439 of the Code, said of section 439:

"This latter section, it has been held, requires, not only that the facts alleged shall show a cause of action, but also that such cause of action shall be one of which the court where suit is brought may take cognizance. Bryan v. University Publishing Co., 112 N. Y. 382, 19 N. E. 825, 2 L. R. A. 638; Paget v. Stevens, 143 N. Y. 172, 38 N. E. 273. The court may lack jurisdiction either as in the Paget Case through statutory limitations placed upon its power, or as in the Bryan Case, by reason of the absence from this state of the person sued or the subject-matter of the action. Where suit is brought against a nonresident by substituted service, it must partake of the nature of an action in rem or jurisdiction will not be acquired to render a valid judgment. * * * The demand for a receiver of the partnership assets with power to sell shows that more is sought than a mere personal judgment. There can be no doubt that a member of a dissolved partnership has a lien upon its assets. * * * Regarding the plaintiff's suit in this aspect—that is, as one brought to enforce a lien upon the partnership assets in this state— it comes precisely within the provisions of subdivision 5 of section 438 of the Code, and there can be no doubt that it is an action of the class which may be begun through service by publication. Specific property within the limits and jurisdiction of this state is sought to be subjected to a lien in favor of the plaintiff."

It was alleged in that case that the copartnership had done business in the city of New York, and that there were assets of the copartnership within the state of New York. The learned court at Special Term held in the case at bar that:

"The purpose of this action is to reach assets belonging to the Cobre Company in the hands of the other defendants resident, or doing business in this state. It therefore partakes of the nature of an action in rem, and the allegations of the complaint are sufficient to compel jurisdiction."

This was based upon the proposition that the defendants Greene and the Cananea Company and the Greene Consolidated Copper Company were accountable to the Cobre Grande Company as their cestui que trust for large sums alleged to have been received and dissipated by them, and he concluded:

"If the allegations of the complaint are true, * * * the Cobre Company is here and has property here, and, therefore, not only will the court be able to decree the ultimate rights of all the parties, but its judgment may be enforced against res actually within the jurisdiction. In brief, the order of publication should be sustained for the following reasons: (1) The Cobre Company is in this state to an extent sufficient to enable the court to acquire jurisdiction. (2) It has property here in the shape of assets in the hands of the other defendants. (3) The action is quasi in rem. (4) The defendant served is but nominally a party, no relief being asked against it, and is beneficially interested in any results favorable to the plaintiffs. (5) The parties against whom relief is asked are before the court, and it has power to render an enforceable judgment."

It seems to me that those conclusions are based upon the unwarranted assumption of the one vital fact, and that is that the Cobre Grande Company is the cestui que trust of the other defendants, and therefore is entitled to call them to account for what they have, or have had, of the profits from the property of the Cobre Grande Company in their hands in this state. From the allegations of the complaint and the examination of the documents thereto attached and made a part thereof it is apparent that the rights of the Cobre Grande Company depend absolutely, it never having had the legal title to the properties the subject of the action, upon the establishment of their equitable right, title, and interest in and thereto, and that the complaint has signally failed to allege the facts which establish such equitable right, whether by inadvertence or because it was impossible to allege the facts because of their nonexistence. To say that there is specific property within the state under such circumstances, and that the action is in rem or quasi in rem, when there is no allegation of due performance of the conditions precedent, or of the facts sufficient to show a waiver of those conditions precedent, by which alone the Cobre Grande Company could acquire legal or equitable title to the property and so become a cestui que trust and entitled to call the other defendants to account, seems to me to lose sight of the very vital essence of this action.

I suppose that "an interest in or lien upon specific property within the state" means something, and that the phrase is not broad enough to cover a claim for an accounting against parties served within the jurisdiction of the state of profits of property situated without the state, unless, at least, the complaint sets up facts sufficient to show that that claim is well founded. Admitting every well-pleaded allegation of fact in the complaint, as we must upon this motion, it fails to show such claim. This omission is fatal.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and the order for publication vacated, with $10 costs.

McLAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). By section 1780 of the Code of Civil Procedure an action against a foreign corporation may be maintained by a resident of the state or by a domestic corporation for any cause of action. The plaintiffs are residents of this state, and have commenced this action to enforce their rights as stockholders of the Cobre Grande Copper Company, a foreign corporation. Their cause of action is based upon wrongs done to the corporation of which they are stockholders by its officers and directors acting for and on behalf of other foreign corporations in whom the said officers and directors are interested. The prevailing opinion seems to base its conclusion upon a statement that the plaintiffs must allege a cause of action against this corporation in whose favor they seek to enforce a cause of action. I do not understand that such is the rule. No relief is asked against this defendant, Cobre Grande Copper Company, and no cause of action can be stated against it. What must be stated is a cause of action in its favor. It is a necessary party to determine the claim of the plaintiffs that it has been defrauded by its officers and directors for their own benefit or for the benefit of their associates, or the other corporations in which they are interested, and its presence as a party to the action is essential for the purpose of having a proper enforcement of a decree that the court could make as against the other defendants for whose wrongful acts relief is sought. Whether or not the facts alleged would sustain a cause of action in favor of the Cobre Grande Copper Company as against the other defendants is a question which should be determined upon demurrer, or upon the trial, and not upon a motion to bring the corporation in whose favor the claim is sought to be asserted into court. If this action cannot be maintained in this state, it is difficult to see where it can be, as the same objection against obtaining jurisdiction over these various corporations could be urged in any state in which an action to redress these wrongs could be brought. When this court vacated the service of a summons and complaint in this action upon the Cananea Consolidated Copper Company, the Court of Appeals reversed the order (189 N. Y. 241, 82 N. E. 191), expressly sustaining the jurisdiction of the court, holding that the Supreme Court of this state had jurisdiction over the cause of action alleged in the complaint; the court saying:

"If it [Cananea Company] has property or profits arising from the mining of ores in the hands of the Greene Consolidated Corporation which in equity belongs to our own citizens, they may apply to the courts, either state or federal, to recover that which belongs to them, and such application is the due process of law which the Constitution recognizes and requires."

It seems to me that to reverse this order would be in direct opposition to the decision of the Court of Appeals when it expressly decided that the courts of this state had jurisdiction over an action to compel the foreign corporations who are defendants in this action to account

to the Cobre Grande Copper Company for money that it has in their possession belonging to that company. It is quite true that as was said by the Court of Appeals that the situation here presented is peculiar and differs from that of any other reported case; but what was said by the Court of Appeals on the former appeal I think applies equally to this:

"The Cananea Company certainly is a proper party in an action for an accounting. Whether it be a necessary party we do not now determine. If it is a necessary party and the courts of this state have not acquired jurisdiction of it by the service of a summons in the manner set forth, it is not apparent how the minority stockholders of the Cobre Grande Company can obtain relief. Should they commence their action in the federal court, they would be met with the same difficulty with reference to the acquiring of jurisdiction over the Mexican corporation, and, should they go to Mexico and institute their action there, they would meet with a similar difficulty with reference to acquiring jurisdiction over the Cobre Grande and the Greene Consolidated Corporations."

And, when the court has acquired jurisdiction over the parties who have committed the wrongful acts alleged and over the corporations in whose hands the property of the corporation of which the plaintiffs are stockholders has come, it seems to me clear that the court then has jurisdiction to bring in a defrauded company into court as a proper party to a complete determination of all the questions presented, and that it has alleged such a cause of action as justified the court in directing the summons to be served by publication.

I therefore dissent.

LAUGHLIN, J., concurs.