MOE I. KATZ ET AL.

*vs.*

NEW ENGLAND FUEL OIL COMPANY ET AL.

Cumberland.        Opinion, May 6, 1938.

*Robinson & Richardson,*
*Bernard Hershkopf,* for plaintiffs.
*Wallace Hawkins,*
*Freeman & Freeman,*
*Verrill, Hale, Booth & Ives,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, HUDSON, MANSER, JJ.

DUNN, C. J.    This case was here previously. In the decision at that time, plaintiffs' appeal was dismissed, but without prejudice,

for prematurity. *Katz et al.* v. *New England Fuel Oil Company et al.*, 135 Me., 379, 197 A., 401.

The cause is now presented on a completed record, inclusive of the answer of the New England Fuel Oil Corporation, a Nevada incorporation, the acts of whose officers have allegedly operated adversely to the interests of the organization and its stockholders. *Wells* v. *Dane*, 101 Me., 67, 63 A., 324.

To authorize a corporation stockholder to sue in his own behalf, or, as here, for himself and others similarly situated who may choose to join, the default of directors invested with the general management of the business of the corporation must be clear. *Hersey* v. *Veazie*, 24 Me., 9; *Ulmer* v. *Real Estate Company*, 93 Me., 324, 45 A., 40; *Trask* v. *Chase*, 107 Me., 137, 77 A., 698; *Hyams* v. *Old Dominion Company*, 113 Me., 294, 93 A., 747; *Bates Street Shirt Company* v. *Waite*, 130 Me., 352, 156 A., 293.

The plaintiffs allege that application by them to the directors of their corporation, to institute action in its own name, for the recovery of what counsel term undelivered royalty oil, was refused, and that any further reasonable effort within the corporation would, because of the hostile domination of majority stockholders, be thwarted.

The demurrer of the defendant, New England Fuel Oil Company, a State of Maine corporation, (it filed, also, plea and answer,) admits, for the purpose of considering the integrity of the bill, the truth of all factual allegations which, in sufficiency of pleading, the bill avers. *Bailey* v. *Merchants Insurance Company*, 110 Me., 348, 86 A., 328. The demurrer, in which there was joinder, tests the face of the bill, or any exhibit, in point of law. 10 R. C. L., 464. If a bill, as presented, does not manifest occasion for the interference of a court of equity, it may be dismissed on demurrer. Story, Equity Pleading, 660; *Reed* v. *Johnson*, 24 Me., 322; *Masters* v. *Van Wart*, 125 Me., 402, 134 A., 539.

The other defendant, New England Fuel Oil Corporation, answered. Its answer, while setting up, so insistence is, a complete defense to the bill, essentially acquiesces in the demurrer filed by the first named defendant.

The appeal opens the whole case for rehearing. *Emery* v. *Bradley*, 88 Me., 357, 360, 34 A., 167; *Wood* v. *White*, 123 Me., 139,

122 A., 177. Upon the appeal, this Court must determine the correctness of the decree below. *Masters* v. *Van Wart,* supra.

In 1916, and prior thereto, the New England Fuel Oil Company, defendant, was drilling for petroleum in the Republic of Mexico. The company had certain lands and leaseholds, with appertaining rights, and was carrying on generally the business of producing and distributing petroleum and its products. It wanted to sell its holdings, and the Magnolia Petroleum Company, a Texas joint-stock association, wished to buy, on agreed terms, subject to the confirmation of titles, and conditioned on the coming in of wells.

The ruling purpose of an agreement dated February 25, 1916, between the company and the association, was to pass, from the one to the other, ownership of the Mexican properties and their appurtenant easements and servitudes, for a consideration, partially cash, partially a promise to deliver, from operations, proportionate quantities of oil.

The situation was complicated by apprehension that legal title to the lands and subsoil deposits might not, because of disturbed conditions in Mexico, be directly conveyed; first obtaining permission from the government would probably be necessary.

The agreement recited, contingent on the title, and the demonstration out of the ground of results worth the price, that, in the stead of deeds or other instruments, there could, to effect purpose, be assignment to the Magnolia Petroleum Company, or to a trustee for it, of the whole, or of at least seventy-five per centum of the outstanding shares of the capital stock of the New England Fuel Oil Company, the Maine entity.

Provision was made, too, for the forming of a third corporation, to acquire the shares, and succeed to the agreement rights of the Maine company.

Termination of the existence of the Maine company was not, however, contemplated. On the contrary, this company should continue to be and maintain its corporate identity, and, on being afforded financial backing by the Texas association, remain a worker in the oil fields.

Titles were approved; oil prospecting was satisfactory.

Shortly after, the new corporation, the New England Fuel Oil Company of Massachusetts, had been formed. It had acquired, not

the entire issue, but enough shares of the capital stock of the Maine company; these had been turned over, through the intervention of a trustee, to the Texas concern.

A second written agreement, of date June 20, 1916, which, as in the instance of the first, was not under seal, was entered into; all three organizations, Maine, Texas and Massachusetts, to designate them by the states of their respective creations, were parties.

"Whereas," a word grammatically and logically tantamount to the words "considering that " or "being the case that" introduced three prefatory statements. Then, relative to present inquiry, were paragraphs as follows:

"ARTICLE I. Magnolia agrees with Massachusetts Company and with Fuel Company to put the Fuel Company in funds, whenever and as soon as the same may be required, to perform the obligations to be by it performed hereunder, and guarantees to Massachusetts Company the punctual performance by Fuel Company of all its obligations hereunder, and waives all notice and other rights of a guarantor and agrees with Massachusetts Company to perform all the obligations of Fuel Company hereunder if Fuel Company does not, to the end that Massachusetts Company may enforce its rights hereunder either against Fuel Company or Magnolia, either jointly or severally."

"ARTICLE II. Fuel Company agrees with Massachusetts Company to carry out its contract with Magnolia hereinbefore mentioned and to do all things incumbent upon it to be done in order to enable Magnolia to pay the royalties, to be paid hereunder, whether in cash or in oil, and further to enable Magnolia to perform all its obligations hereunder."

"ARTICLE III. As provided in Article II of the Preliminary Agreement, Magnolia agrees with the Massachusetts Company to pay to the Massachusetts Company the royalties and consideration hereinafter stated, subject to abatement, however, where so stated, in the proportion which the stock in Fuel Company not transferred and delivered or caused to be transferred and delivered by the Massachusetts Company to Magnolia or to a Trustee as hereinafter set forth, by April 1,

1918, bears to the entire present authorized stock of the Fuel Company."

(Article II, of recital in above paragraph, should read Article III.)

"ARTICLE VI. As a minimum royalty provision the Massachusetts Company shall also have the right in the year beginning April 1, 1918, and in each subsequent year to require the delivery to it f.o.b. ships, Tampico, in the manner and subject to the charges hereinbefore provided, of oil to the amount of its royalty percentage, applied however to the entire capacity instead of to the production of the leases for such year . . . ."

"Magnolia will deliver to Massachusetts Company oil required by Massachusetts Company as aforesaid unless Magnolia is unavoidably prevented therefrom . . . ."

"ARTICLE XI. *Section C.* (2) Magnolia and Fuel Company agree that Fuel Company shall keep full and clear accounts of its own separate conditions and property."

"ARTICLE XII. (1st paragraph omitted.)

The Fuel Company and Magnolia shall, on or before the last day of each calendar month, furnish to the Massachusetts Company a statement of all the oil, from the leases covered by this contract, obtained, stored, transported or sold; the expense of handling such oil; the receipts therefrom; and a brief account of the development work, if any, for the preceding month."

(3rd paragraph omitted.)

"ARTICLE XVII. All the obligations of the Fuel Company and Magnolia hereinabove set out are joint and several obligations and Massachusetts Company may enforce the same against either the Fuel Company or Magnolia without joining the other, and it shall not lose its rights against either by any delay or extension of time given to either or any modification hereof made with either or for want of any demand or notice to either, or otherwise, except only by the receipt of the full consideration stipulated for."

Other provisions are of no instant importance.

The New England Fuel Oil Corporation, defendant, was organized July 2, 1929, with authorized capital of $25,000, divided into 50,000 shares, each of fifty cents, par value. The stock is, it appears, all issued and outstanding. Of such, plaintiffs own 2640 shares, the greater part since 1933.

The Massachusetts company, after conveyance of all its assets to the Nevada company, was subsequently duly dissolved.

Plaintiffs allege, to recur to their position, that, respecting royalty oil, the directors of their corporation have refused fully to protect corporation rights, and that any approach to reverse such refusal would be unavailing.

The bill, as has been stated, names the New England Fuel Oil Corporation, (Nevada,) one defendant, and the New England Fuel Oil Company, (Maine,) the other. The Magnolia Petroleum Company is not a party to this suit.

Plaintiffs contend, as against the Maine company, in especial reference to Articles VI and XVII, in interrelation, that every obligation binding the Texas association became as well that of the Maine company, (of the two jointly and severally,) so that each might be compelled for the whole.

The language of the agreement must be varied materially in order to have it susceptible of that interpretation.

The first maxim of construction, and that upon which rest all the rules, is this, namely, that, so far as the law will permit, the apparent intent of the contracting parties shall be regarded. Operation and intent are to be ascertained from the purpose of the parties; their meaning and understanding as shown by the language they used, applied to the subject-matter. *Hathorn* v. *Hinds,* 69 Me., 326; *Ames* v. *Hilton,* 70 Me., 36; *Veazie* v. *Forsaith,* 76 Me., 172; *Union Water Power Company* v. *Lewiston,* 101 Me., 564, 65 A., 67; *Bell* v. *Jordan,* 102 Me., 67, 65 A., 759; *Bar Harbor, etc. Company* v. *Foundation Company,* 129 Me., 81, 149 A., 801.

Article XVII, a sweeping one, is last but two of the separate, numbered paragraphs in the document. Of the two last, the first authorizes the Massachusetts company to assign its rights; the other defines a barrel of oil as forty-two United States gallons.

The use of a sweeping clause is, generally, to guard against any accidental omissions.

Article XVII must be held to apply in those instances only where, on the part of the Magnolia Petroleum Company and that of the New England Fuel Oil Company, there is unity of liability.

The undertaking of the New England Fuel Oil Company, under Article XVII, in difference from Article I, which is complete in itself, is not the collateral one of a guarantor, nor of suretyship, of binding one person with another, called the principal, for the performance of a duty with regard to which such other is already bound and primarily liable for performance. The promise here is where originally promisors were jointly bound, and were only liable in common; such promises are made enforceable against either or both of the promisors.

But, assuming that the undertaking does relate to the promise made by the Texas association, that it was meant that the Maine company should promise, with the Texas association, collectively and individually, to deliver to the Massachusetts company the royalty oil the Texas association had promised to deliver to Maine, which Massachusetts had competently been substituted to receive, this agreement would, on the part of the Maine company, be without consideration, and could not be enforced.

The showing of the record on appeal is this: first, a valid obligation that the Magnolia Petroleum Company would deliver oil, or pay money equivalent, to the New England Fuel Oil Company; second, the assent of these parties and the New England Fuel Oil Company of Massachusetts to the new contract, whereby Magnolia engaged to deliver to the Massachusetts company what it had before assured to the Maine company. This introduced the change, not of a new debtor, but a new creditor. *Barre Granite Company* v. *Fraser,* 82 Vt., 55, 71 A., 828; *Stowell* v. *Gram,* 184 Mass., 562, 69 N. E., 342; *Hamlin* v. *Drummond,* 91 Me., 175, 39 A., 551; *Pennington* v. *Gartley,* 109 Me., 270, 83 A., 701.

*Appeal dismissed.*
*Decree below affirmed,*
*with additional costs.*