## OTIS & CO. v. PENNSYLVANIA R. CO. et al.

### No. 3618.

District Court, E. D. Pennsylvania.

Nov. 1, 1944.

James F. Masterson and Simon Pearl, both of Philadelphia, Pa., for plaintiff.

Albert Ward, R. Sturgis Ingersoll, and John Dickinson, all of Philadelphia, Pa., for defendants.

KALODNER, District Judge.

In this stockholders' suit plaintiff now moves to strike the answers of the corporate defendants, the Pennsylvania Railroad Company and the Pennsylvania, Ohio & Detroit Railroad Company, and to remove counsel.

The important issue raised by the motion is whether, in a stockholders' secondary (derivative) action against the officers and directors of a corporation for breach of duty, the corporation, joined as a party defendant, may file an answer to the complaint setting forth affirmative defenses.

A brief statement of the case is necessary to the decision. Plaintiff, Otis & Co., an investment banking house, and owner of 60 shares out of a total of 17,400,000 shares of the stock of the Pennsylvania Railroad Company, instituted this action to recover

$1,000,000 from certain, but not all, of the directors and officers of the Pennsylvania Railroad Company, hereafter referred to as P. R. R., and the Pennsylvania, Ohio & Detroit Railroad Company, hereafter referred to as P. O. & D.; the two corporations were also joined as defendants, relief being asked in their favor. It is alleged in the complaint that the defendant P. R. R. owned all of the capital stock of the defendant P. O. & D. As of June, 1943, the P. O. & D. had outstanding a certain issue of 4½% Series "A" Bonds of the total face amount of $28,483,000, with maturity date in 1977.[1] It is alleged that in June, 1943, defendant Martin W. Clement, president of P. R. R., and defendant, George Pabst, Jr., vice-president of P. R. R. and president of P. O. & D., entered into negotiations with Kuhn, Loeb & Co. with a view to P. O. & D. selling to the latter a new bond issue (eventually named Series "D" bonds), and with the proceeds of such sale pay off the outstanding Series "A" bonds. On June 23, 1943, the directors of P. O. & D. authorized the issuance of the new bonds and their sale "at the best obtainable price"; on that same date the directors of P. R. R. met and authorized the guarantee by that company of the proposed issuance. Thereafter, P. O. & D. entered into a contract with Kuhn, Loeb & Co. to sell the bonds at par subject to approval by the Interstate Commerce Commission. The Interstate Commerce Commission approved the issuance and sale at par and a quarter. 254 I.C.C. 473.

The gist of the complaint is that the transaction was entirely private, that a half million dollars was lost in failing to "shop around", and another half million lost in failing to put the new issue to competitive bidding; therefore, it is alleged, the "best obtainable price" was not obtained. It is also asserted that certain of the directors and officers were influenced because of their position as directors or officers of several companies which had made agreements with Kuhn, Loeb & Co. to purchase from the latter part of the bonds.

It is contended in support of plaintiff's motion that the corporations are made defendants merely for a technical reason, that is, the refusal on their part to prosecute the alleged cause of action against the individual defendants; that in substance, the corporations are the real plaintiffs; that actually the interests of P. R. R. and

P. O. & D. are allied with the plaintiff's, in view of the fact that any money recovery will go to the corporations and not to plaintiff. Accordingly it is urged that the defendant corporations ought not to be permitted to file answers designed to defeat plaintiff's claims, and that the proper conduct is to remain neutral or aid plaintiff.

Despite the great familiarity of the courts with stockholders' suits, the problem raised by the instant motion is one on which there are few satisfactory cases, and little other helpful authority. Exceptional difficulty is generated by the breakdown of the legal entity theory of corporate existence. The complaint of plaintiff in this motion is understandable, for the individual defendants are the very persons charged with carrying on the everyday affairs of these corporations, and upon whom devolves the duty of determining the corporations' stand in this case. Nevertheless, it is possible in an equity court to preserve to a great degree the entity fiction of corporate existence in a case of this sort.

The clearest example of a stockholders' secondary action against the corporate directors in which the corporation ought not to be permitted to defend the individual defendants may be found in the case of Meyers v. Smith, 1933, 190 Minn. 157, 251 N.W. 20. There the minority stockholder sued, on behalf of a corporation, to recover money claimed to have been misappropriated by certain of its directors out of corporate funds. The court properly struck an answer of the corporation containing affirmative defenses to the charges against the officers. Cf. Monahan v. Kenny, 1936, 248 App.Div. 159, 288 N.Y.S. 323.

On the other hand, a clear case in which the corporation ought to be permitted to file an answer is Godley v. Crandall & Godley Co., 1917, 181 App.Div. 75, 168 N.Y.S. 251, where it appears that an attempt had been made to procure a receiver of the corporate assets; and see Oshrin v. Celanese Corp. of America, Sup.1942, 37 N.Y.S.2d 548.

The court in Meyers v. Smith, supra, applied a very broad theory denying the corporation's right to answer (page 21 of 251 N.W.): "The corporation is a nominal party only. It was properly joined as a party for the protection of the defendants, so that when final judgment herein is entered the

---

[1] Redeemable on 60 days' notice at 102.5%; payment of interest and principal unconditionally guaranteed by P. R.R.

two individual defendants may be thereby protected from a second suit on the same causes of action brought by the corporation * * *. But that does, not vest in the corporation the right to here step in and, by answer, attempt to defeat what is practically its own suit and causes of action." Similarly, Slutzker v. Rieber, 1942, 132 N.J.Eq. 412, 28 A.2d 528.

While the court reached the correct result in that case, it would appear that the theory underlying the decision is too narrow to take care of the case where, say, the corporation would be otherwise directly affected. (1934) 43 Yale L.J. 661, 663.

On the other hand, the court in McHarg v. Commonwealth Finance Corp., 1921, 44 S.D. 144, 182 N.W. 705, 706, states an equally broad view the other way: "Of course, this is a representative action, and the corporation is a necessary party to the action; but because a minority stockholder charges a wrongdoing by directors of a corporation which, if he succeeds in the action, will inure to the benefit of the corporation, he does not thereby become possessed of the right to dictate the defense or manner of defense that the corporation may undertake * * *."

Manifestly this theory would bring about an undesirable result if applied to a case where the directors are charged with fraud or misappropriation of corporate funds. But see Brown v. DeYoung, 1897, 167 Ill. 549, 47 N.E. 863.

Finally, many stockholders' secondary actions have been heard by the courts wherein the corporation has interposed defenses without objection. Brown v. DeYoung, supra; Katz v. New England Fuel Co., 1936, 135 Me. 452, 199 A. 274; Overfield v. Pennroad Corp., D.C.E.D.Pa.1941, 42 F.Supp. 586.

■ A hard and fast rule one way or the other, it seems to me, is undesirable in this type of case, and it would be especially inappropriate for a court of equity to apply either view without a thorough consideration of the equitable elements involved in the cases. Upon examination of the relatively few cases on this issue, it is revealed that while a court may have chosen one particular view rather than the other, the reason for its choice lay in the nature of the case before it. Contrast, for example, Meyers v. Smith, supra, with Godley v. Crandall & Godley Co., supra; see Jesse v.

Four Wheel Drive Auto Co., 1922, 177 Wis. 627, 189 N.W. 276.

Analytically the all-important question when the corporation seeks to defend is that of the nature of the complaint and the interest of the corporation in the controversy. When fraud is the complaint against the directors, the essence of the corporation's interest is, and ought to be, in having the truth of the charges determined and in recovering all funds of which it was deprived. See (1934) Yale L.J. 661, 663. The corporation has no reason, then, to make affirmative defenses, except perhaps in a limited capacity. See Groel v. United Electric Co. of N. J., 1905, 70 N.J.Eq. 616, 61 A. 1061, 1064, 1065. Similarly, when the cause of action is such as to endanger rather than advance corporate interests, an answer setting forth affirmative defenses seems proper. See (1934) Yale L.J. 661, 662; and cf. Washington, Stockholders' Derivative Suits (1940) 25 Corn. L.Q. 361. This approach to the problem of the instant case was at least touched upon in Hanrahan v. Andersen, 1939, 108 Mont. 218, 90 P.2d 494, 505, 506; in Oshrin v. Celanese Corp. of America, supra; and in Kirby v. Schenck, Sup. 1941, 25 N.Y.S.2d 431, 433.

Coming now to the case at bar, the facts having been set forth, it remains only to inquire into the nature of the complaint and to examine the interest of the defendant corporations in the action. Plaintiff, it must be noted at the outset, does not charge fraud or misappropriation of corporate assets. Although it is alleged certain of the individual defendants were also directors of institutions interested in purchasing the bonds from Kuhn, Loeb & Co., it was expressly stated by plaintiff's counsel during the oral argument that there was no assertion that these directors had any personal interest in floating the bond issue through Kuhn, Loeb & Co.

■ The chief complaint, in summary, is the fact that the new bond issue was privately negotiated and investment banking houses, other than Kuhn, Loeb & Co., were not given the opportunity of a "look-in" on either preliminary consideration of the issue or its final flotation. However, the manner in which the defendant corporations floated the bond issue has been in use by the railroads almost since "Iron Horse" days—it is apparently a matter of corporate policy pursued by railroads generally.

It may be noted that the entire matter of the propriety of the bond issue here involved was heard by the Interstate Commerce Commission, the case having been submitted July 9, 1943. Information relative to the applications, the hearings and order of the Interstate Commerce Commission was widely advertised and published throughout the United States.

The Commission gave full consideration to bids made by Halsey, Stuart & Co., and by Otis & Co., the instant plaintiff; likewise, the Commission heard Otis & Co., as intervener in that action, on the issue of the propriety of the private sale and the appropriateness of competitive bidding. In its report, 254 I.C.C. 473, the Commission approved the bond issue at a slightly higher price. In answering the question on competitive bidding, the Commission pointed out that it had, for a number of years, required competitive bidding for certain types of securities of special characteristics, but as to other securities, such as those involved here, the Commission said: " * * · * the negotiated price has been scrutinized in the light of the terms of each issue and the money market conditions obtaining at the time of the sale, and, if the price has been found to be fair and reasonable, the issue and sale has been authorized. However, when we have deemed the proposed sale price to be too low, the carrier has been so advised or a minimum price has been fixed in authorizing the issue of the security. Those practices have been long established and are well understood by the railroads. We have not recently engaged in a general investigation as to the matter of competitive bidding. * * * Nor have we, in a decision in a particular case, given any indication, as a timely notice, that such practice would be expected to be observed. * * * In the absence of such general rule or a decision of similar purport, these railroads have considered they should proceed along the lines heretofore followed in the sale of their securities. * * * The bonds have been favorably received, and now to say, after the exploratory testing of the market is accomplished, and because some other prospective purchaser is willing in the light thereof to offer a higher price, that this issue is one which requires that the sale should be made only through competitive bidding, would be a conclusion not warranted by the facts. * * *"

Although the Commission has since required competitive bidding on railroad bond issues, see 9 F.R. 7205 Appendix, June 29, 1944, the fact is that the bond issue here was approved and the corporate policy at that time found to be in accordance with custom and the Interstate Commerce Commission rules.

There having been an attack on a long established corporate policy, recognized and approved by the Interstate Commerce Commission, reflecting on the good faith of the administration and affecting the good will of the corporate defendants, it seems to me it is proper that the corporations here involved be permitted to answer the complaint. Kanneberg v. Evangelical Creed Cong., 1911, 146 Wis. 610, 131 N.W. 353, 39 L.R.A.,N.S., 138, Ann.Cas.1912C, 376; Central Shorewood Bldg. Corp. v. Saltzstein, 1944, 245 Wis. 138, 13 N.W.2d 525, 527, 528. They have a definite stake in the controversy; good will is of importance to corporations existing in an industry where money frequently is borrowed on a large scale. It has been suggested that the damage is done when the complaint is filed; see Harris v. Pearsall, 1921, 116 Misc. 366, 190 N.Y.S. 61; and that vindication would come with victory by the individual defendants, see Washington, op. cit. supra. But the corporate policy and corporate good will are of vital economic interest to the corporations, and they should be given the opportunity to defend. In speaking of indispensability of the presence of a corporation as a party in a stockholders' derivative suit, the Supreme Court of Pennsylvania, in Kelly v. Thomas, 1912, 234 Pa. 419, at page 429, 83 A. 307, at page 310, 51 L.R.A., N.S., 122, stated: "Not only was its (the corporation's) presence necessary to the plaintiff, but the defendants were entitled thereto * * * and the company itself was entitled to notice in order that its interests and the rights of its creditors might be protected."

■ Even under the well-known theory of the nature of the stockholders' suit, that is, that there are two causes of action combined, one by the stockholder against the corporation for refusing to act, the other by the stockholder as representative of the corporation against the individual defendants, the defendant corporations here have a right to defend their refusal to sue. See 13 Fletcher, Corporations, (1937) §§ 5945, 5947; Dodge v. Woolsey, 1855, 18 How. 331, 59 U.S. 331, 343, 344, 15 L.Ed. 401; Grant v. Cobre Grand Copper Co., 1908, 126 App.Div. 750, 111 N.Y.S. 386, 391; see

also Kelly v. Thomas, supra. The mere fact that the defendant corporations stand to gain financially should plaintiff succeed is not enough to conclude their standing. Venner v. Great Northern R. Co., 1908, 209 U.S. 24, 32, 28 S.Ct. 328, 52 L.Ed. 666.

It must be kept in mind, too, that this is a stockholders' secondary action and that inherent in such an action is the corporations' prior failure to enforce an alleged right. The stockholders' action is critical of the corporations' management and the corporations should have a right to answer, subject to the exceptions hereinbefore mentioned where fraud of the directors or management is the essence of the stockholders' action. A realistic view must take into consideration that a secondary action brought by even one stockholder is regarded by law as being a class action—taken by or on behalf of all stockholders.[2] Thus we have an arraignment of the stockholders on one side and management on the other, with the issue being the charges of mismanagement. To peremptorily shut the door on management and deny it its day in court might, in many instances, have a destructive effect on the interest of the stockholders.

Finally, plaintiff further seeks to remove counsel of defendants on the ground of conflicting, dual and inconsistent interests. It appears that Albert Ward, Esq., entered his appearance, on March 24, 1944, for P. R. R. and P. O. & D.; that R. Sturgis Ingersoll, Esq., entered appearance on March 17, 1944, for all individual defendants, and on March 23, 1944, for the corporate defendants; that John Dickinson, Esq., entered appearance on April 14, 1944, for the individual defendants. It is alleged that Dickinson is general counsel for P. R. R. although he did not enter appearance for them. Nevertheless, both Ingersoll and Dickinson have filed various documents— the answer of all defendants to the instant motion, and the brief of all defendants in support of the answer—in which they appear as "Counsel for All Defendants."

 In my opinion there is no reason to require removal of counsel as petitioned. The corporation, as an interested party having a right to appear and defend, may select such counsel as it chooses. Moreover, there is no allegation of any breach of confidence or trust of which either the corporations or the individual defendants com-plain. In any event, it is doubtful whether plaintiff is the proper party to complain, since the attorneys hold no confidence belonging to it. See 7 C.J.S., Attorney and Client, § 47, p. 827; Ferguson v. Alexander, Tex.Civ.App., 122 S.W.2d 1079; Michel v. McKenna, 1929, 199 Wis. 608, 227 N.W. 396, 398. Moreover, there are many stockholders' suits on record in which the same counsel represented both the individual and corporate defendants. See Riley v. Boynton Coal Co., 305 Pa. 364, 157 A. 794; Bonini v. Family Theatre Corp., 327 Pa. 273, 194 A. 498; Beck v. O'Laughlin, 337 Pa. 416, 11 A.2d 867; Steckler v. Pennroad Corp., D.C., 44 F.Supp. 800, affirmed 3 Cir., 136 F.2d 197, certiorari denied 320 U.S. 757, 64 S.Ct. 64. See also Elberta Oil Co. v. Superior Court, 1930, 108 Cal.App. 344, 291 P. 668 (where the court specifically noted the fact that counsel represented the corporation and the individual defendants who were charged with profiting at the corporation's expense).

For the reasons stated the plaintiff's motion to strike the answer of the corporate defendants and to remove counsel is denied.

---

[2] Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.