IRVING ELIASBERG, INC., ET AL.
*vs.*
W. EMLEN ROOSEVELT, ET AL.

York.   Opinion, July 25, 1961.

*Lincoln Spencer,*
*Waterhouse, Spencer & Carroll,* for plaintiffs.

*Linnell, Perkins, Hinckley, Thompson & Thaxter,*
*Sidney W. Thaxter,*
*Charles P. Barnes,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.  SIDDALL, J. did not sit.

WILLIAMSON, C. J.   This is an action by a landowner and his lessee (1) for a declaratory judgment of their rights in and to the use of an elevator and a loading platform in an adjoining building owned by the defendants, (2) for an injunction against the removal or destruction of the elevator and loading platform or money damages for such removal or destruction, and (3) damages to plaintiffs for loss from the flooding of the cellar from rain and surface water resulting from the demolition in part of the building housing the elevator.

The case is reported to us for decision on complaint, answer, and evidence legally admissible.   In the event damages are recoverable, it is agreed the amount shall be fixed finally by the presiding justice after hearing.

In 1956 the plaintiff, Irving Eliasberg, Inc., a New York Corporation (hereinafter sometimes called "Eliasberg"), purchased from Passamaquoddy Properties, Inc. (hereinafter sometimes called "Passamaquoddy"), certain buildings formerly belonging to Goodall-Sanford, Inc. and which were part of what the parties graphically term a "manufacturing complex."   Building No. 4, a brick structure, owned by Eliasberg, was served by the elevator and loading platform in question located in an adjoining wooden building known as Building No. 5, being a part of a group of wooden buildings called the "white buildings."

The elevator is used for freight and serves two floors and the basement of Building No. 4, and two stories of Building No. 5, with doors on opposite sides opening to each building.   Aside from the common doors there is no connection between the buildings, and Building No. 5 can be removed without damage to Building No. 4.

The loading platform in Building No. 5 is used for receiving and shipping goods by the plaintiff tenant Sher Woven Label Co., Inc.

Demolition of the "white buildings," including Building No. 5, commenced in March 1960 and continued during the summer. By agreement demolition of the elevator was discontinued pending litigation.

The decision in our view of the facts turns upon the intention of the parties expressed in the "Letter Agreement," set forth below, in light of the situation of the parties at the time the agreement was made. *Monk* v. *Morton,* 139 Me. 291, 30 A. (2nd) 17; *Katz et al.* v. *New England Fuel Oil Co., et al.,* 135 Me. 452, 199 A. 274; *Power Company* v. *Foundation Company,* 129 Me. 81, 149 A. 801.

The following excerpts from deeds and agreements are of importance.

1. Deed of Building No. 4 from Passamaquoddy to Eliasberg, dated May 15, 1956, and recorded May 25, 1956, reads in part:

> "And together also with the right to use the elevator and loading platform in Building No. 5 in accordance with separate written agreement made between the parties.
>
> "EXCEPTING AND RESERVING to and for the benefit of the grantor, its successors, grantees and/or assigns, and the benefit of the Trustees of the Grossman Family Educational Trust and Sanford Properties, Inc., their successors, grantees, and/or assigns, the right to enter upon the foregoing premises for the purpose of using, maintaining, repairing and replacing and as access to any and all pipes, wires, meters and other equipment, apparatii and appurtenant fixtures, including elevators, shafts and other conveyancers wherever the same may be located in, upon or within the foregoing premises and serving other premises now or formerly owned by Goodall Worsted, Sanford Mills and/or Goodall-Sanford, Inc., and for the purpose of relocating any of the foregoing to such location or area as will not in the bona fide

judgment of the grantee unreasonably interfere with the use of the premises by the grantee or its tenants, and the cost of such relocation and repairs necessitated thereby to be borne by the grantor, its successors and/or assigns."

2. Letter Agreement between Passamaquoddy and Eliasberg, dated May 15, 1956, being the "separate written agreement" referred to in 1. above, and recorded June 7, 1956, reads in full:

## "LETTER AGREEMENT

"On this 15th day of May, 1956, PASSAMAQUODDY PROPERTIES, INC., a Maine corporation with offices in Sanford, Maine, conveyed by Deed to Irving ELIASBERG, INC., a New York corporation with offices at 350 Fifth Avenue, New York City, New York, a certain parcel of land, together with the buildings thereon, all in accord with the Purchase and Sale Agreement executed by and between the said parties on March 17, 1956.

"For One ($1.00) Dollar and other good and valuable consideration, Passamaquoddy Properties, Inc. hereby grants unto IRVING ELIASBERG, INC. the right to use in common with others the elevator and loading platform in the Southerly section of Building No. 5, which Building is located in the Goodall Division of what was formerly known and referred to as Goodall-Sanford Mills, Inc., in Sanford, Maine (See Plan attached to Deed) provided that IRVING ELIASBERG, INC. shall be responsible for damage to persons or property caused by it or its agents in the operation of said elevator, and further provided that the expense of maintaining and operating said elevator shall be shared proportionately by the said IRVING ELIASBERG, INC. with any other user or users of said loading platform and elevator and that with respect thereto IRVING ELIASBERG, INC. shall maintain liability insurance policies satisfactory to the said PASSAMAQUODDY

PROPERTIES, INC. and wherein the said PASSAMAQUODDY PROPERTIES, INC. shall be specifically named.

"PASSAMAQUODDY PROPERTIES, INC. further covenants and agrees that at such time as it conveys to third parties the said land and buildings wherein the elevator and loading platform are located, it will obtain for the said IRVING ELIASBERG, INC. a right to the use of that elevator and loading platform in common with others as herein provided for, subject to IRVING ELIASBERG, INC. agreeing to pay its proportionate share of maintenance and expense in connection therewith.

Assented to:

PASSAMAQUODDY PROPERTIES, INC.
By Bernard Grossman

Assented to:

IRVING ELIASBERG, INC.
By Irving Eliasberg   Pres

STATE OF MAINE

County of York, ss.                    May 15, 1956
Personally appeared Bernard Grossman, Treasurer of PASSAMAQUODDY PROPERTIES, INC. and acknowledged the foregoing to be his free act and instrument in his said capacity and the free act and instrument of PASSAMAQUODDY PROPERTIES, INC.

Before me, George S. Willard   Notary Public Justice of the Peace   (L.S.) ''

3. "Bill of Sale and General Conveyance" from Passamaquoddy to its sole stockholder Grossman's of Maine, Inc., of all assets including Building No. 5 under the terms of a plan of complete liquidation of Passamaquoddy dated December 31, 1958, and recorded March 31, 1959.

This transfer covered all of Passamaquoddy's property and assets of every kind, nature, and description "subject to all of the debts, contracts and other obligations of Passamaquoddy to or with third persons whether such debts, contracts, or other obligations are liquidated, contingent, or arising after the date hereof."

4. Deed from Grossman's of Maine, Inc. to Lawrence L. Reeve of a substantial part of its property in the "manufacturing complex" including Building No. 5 and the other "white buildings" dated March 31, 1959, and recorded March 31, 1959, reads:

"The hereinbefore described premises are hereby conveyed subject to and together with the benefit of all rights of way, grants, agreements, and easements now of record and in effect, together with all reservations and rights of the Grantor therein.

"Reserving and excepting, however, to or for the benefit of the Grantor, its successors, and/or assigns, so long as the Grantor, its successors and/or assigns, have interests as Mortgagee, . . the right . . . to enter upon the premises . . for the purpose of using, maintaining, repairing and replacing any and all pipes, wires, meters and other equipment, apparatii and appurtenant fixtures, wherever the same may be located, in, upon or within the foregoing premises, and serving other premises now or formerly owned by Goodall Worsted, Sanford Mills and/or Goodall-Sanford, Inc., and for the purpose of relocating any of the foregoing to such location or areas as will not unreasonably interfere with the use by Grantee (or successors and/or assigns) of said premises, the cost of such relocation, if any, to be borne by the Grantor, its successors and/or assigns; the within reservation and exception shall include the right to accomplish the purposes hereinbefore set forth."

5. Agreement as to "Partial Releases" between Grossman's, Inc. of Maine, mortgagee, and Lawrence L. Reeve,

mortgagor, dated March 31, 1959, and recorded March 31, 1959. On the same day Reeve made two mortgages to the mortgagee in the total amount of $400,000. The agreement provided that the "white buildings" (which included Building No. 5) could be torn down and removed "without the same constituting waste and a breach of said mortgages."

The agreement further provides:

> "The tearing down and removal of said white buildings, by or on behalf of MORTGAGOR (or successors and/or assigns) or by MORTGAGEE, its successors and/or assigns, shall involve, if necessary, the repair, replacement and/or relocation, as the case or cases may be, of any and all pipes, wires, meters and other equipment, apparatii and appurtenant fixtures, which have been affected by such tearing down and removal, serving other premises now or formerly owned by Goodall Worsted, Sanford Mills and/or Goodall-Sanford, Inc., to the end that such facilities shall continue to be operative, notwithstanding such tearing down and removal."

6. Lawrence L. Reeve entered into an Indenture of Trust with the defendant W. Emlen Roosevelt and Ward T. Hanscom, Trustees (hereinafter sometimes called the "Stenton Trust"), dated December 3, 1959, and recorded December 10, 1959, and he conveyed the property acquired from Grossman's of Maine, Inc. to the Stenton Trust by deed dated December 21, 1959, and recorded December 28, 1959. "This conveyance is made subject to and together with the benefit of all rights of way, grants, agreements, and easements now of record and in effect, and subject to all reservations and rights of Grossman's of Maine, In—. as particularly set forth in said above mentioned deed." (4. above).

The main question for decision is whether the defendant trustees, owners of Building No. 5, may remove and destroy

the elevator of their own volition. The loading platform apparently is used with the elevator. In other words, has Eliasberg such an interest in the elevator that it may prevent its removal or destruction? Eliasberg contends that it has an easement on Building No. 5 for the use of the elevator, and that while the elevator is operative, the defendant owner of Building No. 5 has no right to destroy it, at least unless it is replaced. The defendants on their part argue that Eliasberg had a license terminable on the sale of the premises by Passamaquoddy (or Grossman's of Maine, Inc.) and that this is the full force of the Letter Agreement.

The heart of the case is found in the Letter Agreement. Passamaquoddy in the deed to Eliasberg granted the right to use the elevator and loading platform "in accordance with a separate written agreement," that is, with the Letter Agreement. It is to be noted that the Letter Agreement, although dated as of the same date as the deed, was not recorded until several days thereafter. Without the Letter Agreement, Eliasberg acquired no rights whatsoever in the elevator or loading platform.

The bite of the agreement for our purposes lies in the undertaking of Passamaquoddy to secure an agreement from the purchaser for use of the elevator and loading platform by Eliasberg in the event Passamaquoddy disposes of Building No. 5. If Eliasberg had an easement (or an agreement in the nature of an easement) running with the land, it would have no need of this protective clause. With such a provision carrying with it an affirmative undertaking to obtain a like agreement for Eliasberg from the next owner of Building No. 5, there remains no doubt in our minds that the parties intended that the permission to use the elevator and loading platform under the Letter Agreement ended with the sale of the property. In short, Passamaquoddy

licensed Eliasberg to use the elevator and loading platform while Passamaquoddy owned the property, and no longer.

Grossman's of Maine, Inc. entered the picture in the dissolution of Passamaquoddy and must be held to like responsibilities with Passamaquoddy. Mr. Reeve, however, was a purchaser of real property not subject to limitations made by his predecessors in title that had not reached the status of easements or agreements in the nature of easements running with the land.

We may assume that Mr. Reeve knew of the duty of Passamaquoddy and of Grossman's of Maine, Inc. to obtain an agreement for the continuance of the right to use the elevator and platform. It does not follow, however, from such knowledge that he and his assignees became bound thereby in the absence of an agreement with Eliasberg.

Grossman's of Maine, Inc. (and Passamaquoddy as well), breached the agreement to obtain such an agreement compelling the purchaser Reeve to honor the agreement they had made. This was the extent of their obligation.

To hold otherwise would saddle Building No. 5 with an easement or an arrangement not unlike an easement in face of the plain intent to limit the right to use the elevator and loading platform to the period of ownership of the two properties Buildings Nos. 4 and 5 by Eliasberg and Passamaquoddy (or Grossman's of Maine, Inc.) in the absence of a further agreement with the purchaser from Passamaquoddy.

Inasmuch as an easement (or right in the nature of an easement) in the use of the elevator and loading platform was not established, there is no need, in our view, to consider or pass upon issues relating to the extent and termination of easements or rights of this nature.

There should be entered in the Superior Court (1) a declaratory judgment to the effect that Eliasberg and its

successors and assigns have no right in the maintenance, use, occupancy, and protection of the elevator or loading platform in Building No. 5 against the Stenton Trust, or its successors or assigns, by or through the conveyance from Passamaquoddy to Eliasberg and the Letter Agreement referred to therein, both dated May 15, 1956, recorded in York County Registry of Deeds, Book 1326, Page 241, and Book 1326, Pages 344, 345; (2) a denial of the prayer for injunctive relief against the removal or destruction of the elevator and loading platform; (3) a denial of the prayer for a mandatory injunction directing the Stenton Trust to repair the elevator and loading platform, or in lieu thereof to furnish equally convenient facilities.

On the claim of the plaintiffs against the Stenton Trust for damages from the flooding of the cellar of Building No. 4 resulting from the partial demolition of Building No. 5, the record is brief and not sufficient to form an accurate basis for decision on liability. The claim may, however, have merit. *McRae* v. *Water Co.,* 138 Me. 110, 22 A. (2nd) 133. Justice requires that on this issue the case be remanded for hearing with opportunity to introduce additional evidence and decision by the presiding justice.

The entry will be

> *Remanded to Superior Court for action in accordance with this opinion.*